In the Matter of MIMSHELL FABRICS, LTD., Bankrupt.

NEW YORK CREDIT MEN'S ADJUST-MENT BUREAU, INC., Trustee, Appellant,

v.

C.I.T. CORPORATION et al., Appellees.

No. 51, Docket 72–1804.

United States Court of Appeals, Second Circuit.

Argued Oct. 30, 1973.

Decided Jan. 25, 1974.

Herbert Ash, New York City (Hahn, Hessen, Margolis & Ryan, Frederick C. Stern, New York City, of counsel), for appellant.

Mendel Zucker, New York City (Goldschmidt & Zucker, New York City, Joel Ifcher, New York City, of counsel), for appellee The Singer Co.

Sheldon Engelhard, New York City (Vladeck, Elias, Vladeck & Lewis, New York City, of counsel), for appellee Speizman Knitting Machine Corp.)

Alexander H. Rockmore, New York City (Samuel Gutterman, New York City, of counsel), for appellee Monarch Knitting Mills and C. I. T. Corp.

Before MOORE, FEINBERG and MANSFIELD, Circuit Judges.

MOORE, Circuit Judge:

New York Credit Men's Adjustment Bureau, Inc. (hereafter New York Credit), appellant in this action, is trustee in bankruptcy for Mimshell Fabrics, Ltd. (hereafter Mimshell), a contract knitting firm. Mimshell was adjudged a bankrupt on August 30, 1971, and New York Credit, as trustee, represents its general creditors. The several appellees in this action are firms that supplied Mimshell with machines used in its business pursuant to conditional sales contracts. The security interests formed by these contracts were filed with the Secretary of State of New York in Albany. These filings were sufficient to perfect the respective security interests only if Mimshell had a place of business in more than one county in the State. N.Y.U.C.C. § 9–401(1)(c). If this was not the case, namely, if it had a place of business within only one county, then duplicate filing in Albany *and* in the county filing office, is required for perfection.[1] If the security interests were perfected, then they could be enforced against the trustee and the appellees would have a right to reclaim the machines. If the security interests were not perfected, then they would be cut off by the bankruptcy and there would be no right of reclamation. The Referee in Bankruptcy granted the petition to reclaim, after finding that Mimshell had had more than one place of business during the period involved. The trustee sought review, which was denied. This appeal is from the denial of the petition to review.

### The Facts

Mimshell's business consisted of knitting yarn into cloth on a consignment basis. The yarn would be supplied by, and the cloth returned to, other companies, known as converters. These companies would give the cloth out to other jobbers who perform other steps in the manufacturing process such as dyeing and sponging. Mimshell originally started its operations in 1967 in Brooklyn and, late in 1968, transferred its processing operations along with its books and records to Suffolk County. However, in March of 1970, the principal stockholders of Mimshell, Marc Perlman and Jerome Barnett, organized a company, M.B.S. Fabrics, Ltd. (hereafter M.B.S.), to engage in the business of textile conversion and obtained offices for that company in New York County at 1407 Broadway. Later M.B.S. moved to 108 West 39th Street in Manhattan. The Referee, crediting the testimony of Marc Perlman, found that between "February or March, 1970, and June, 1970, a sales room for both M.B.S. and the bankrupt [Mimshell] were operative at 1407 Broadway." This sort of joint arrangement continued at several other places where M.B.S. did business in Manhattan. The chief difficulty in this case arises from the fact that Mimshell's representatives were not particularly open about its connection with M.B.S. There were no outside physical indicia of Mimshell's presence in M.B.S.'s offices—no letterhead, no telephone listing or entry in a building directory. Although various Mimshell representatives were known to frequent M.B.S.'s offices, their presence there would not have excited comment since they also formed part of the M.B.S. staff. The reasoning behind this style of behavior was simple: Mimshell and M.B.S., although separate corporate entities, were run by the same people, and M.B.S. was a competitor of Mimshell's customers; thus, in order not to confuse potential customers, it was thought necessary to keep Mimshell's presence in New York City quiet. Nevertheless it was testified that Mimshell's multiple places of business were

---

1. We do not face an alternative possibility—namely, two places of business in one county in the State.

known to the people with whom Mimshell dealt. This fact was accepted by the Referee, and led to his conclusion that Mimshell had places of business in two counties for the purposes of N.Y.U. C.C. § 9–401(1)(c).

■■ Appellant initially argues that the Referee's findings should be discarded as "clearly erroneous". A comparison of the testimony and the findings forbids such a conclusion. The Referee's determinations should be given especial weight when the credibility of witnesses is at issue. In re Gurinsky, 196 F.2d 296 (2d Cir. 1952). In re Re-Bo Mfg. Co., Inc., 90 F.Supp. 388 (S.D. N.Y.1950). In the present case, the Referee found that Marc Perlman, Mimshell's president, testified with "exceptional candor." The Referee was entitled to believe him and his testimony supports the findings of fact.

■ To buttress the contention that the findings were clearly erroneous, appellant claims that several of the findings were unfounded. Most of these claims run contrary to the testimony found in the record and are unpersuasive. One that merits some attention is the claim that the Referee confused the term "place of business" with "doing business". The meanings of the two terms, although related, are admittedly distinct. As appellant points out (Appellant's Br. p. 21), a company may "do business" in a place without having a "place of business" there. It would appear, however, that the Referee had the distinction in mind for he clearly framed the issue correctly in stating: "The question presented . . . is whether or not . . . the bankrupt maintained places of business. . . ." (223a) and again "I conclude . . . that the bankrupt is held to have had places of business. (220a)." Merely because he gave consideration to the "doing of business"—a fact necessary to the determination of the issue of place of business, In re Bethlehem Concrete Corp., 306 F.Supp. 1047 (E.D.Pa.1969) —is no ground for error.

■ The second argument appellant raises is that to have a "place of business", the use of the premises must be "frequent and notorious". As to frequency of use, there was sufficient testimony upon which to make that finding not "clearly erroneous". It is argued, however, that the relative secrecy of Mimshell's operations in Manhattan should prove fatal to the appellees' cause. But this argument runs afoul of the Referee's finding that Mimshell's presence was known to those "in the trade" (Finding No. 3), a finding supported in the record. There is no doubt that the purpose of N.Y.U.C.C. § 9–401(1)(c) was to preserve the convenience of local filing for the benefit of potential local creditors as indeed the "Official Comments" to that section suggest. This convenience has been strictly protected by this court. In re P.S. Products Corp., 435 F.2d 781 (2d Cir. 1970). However, it seems sufficient for perfection that the class of probable potential creditors know of the second place of business. Thus, the fact that Mimshell had New York City operations was widely known among those who dealt with Mimshell which is sufficient to make the M.B.S. offices a "place of business" for the purposes of § 9–401(1)(c). The fact that the building manager and the elevator starter did not know of its presence is of less significance.

■ In one minor respect, however, there is error and, on this point alone, there must be reversal. The security interest currently owned by Singer in one machine, PIP/96–#22406, was created on December 4, 1969. On this date it was admitted by the president of Mimshell that Mimshell had no office in New York City. Absent proof of the maintenance of a "place of business" in New York City at that time, this security interest was not perfected before the bankruptcy, and must fall to the trustee's attack.

The decision of the Referee is affirmed except with respect to machine PIP/96–#22406 owned by Singer as to which it is reversed.