*331
 
 JOHN R. GIBSON, Circuit Judge.
 

 Central Terminal Warehouse, a public warehouse in North Little Rock, Arkansas, contracted with McCrary’s Farm Supply of Lonoke and England, Arkansas, to store agricultural chemicals. Whether this relationship makes Central Terminal Warehouse one of McCrary’s places of business is the sole issue in this case. The bankruptcy court found that it did not. The court held therefore that American Cyanamid and BASF Wyandotte (BASF) had failed to properly perfect their security interests in chemicals sold to McCrary’s because they had filed financing statements only with the Arkansas Secretary of State. American Cyanamid and BASF appeal claiming that Central Terminal (located in Pulaski County, Arkansas) was one of McCrary’s places of business and that central filing was therefore sufficient to perfect their security interests. We conclude that the finding of the bankruptcy court was clearly erroneous and we reverse.
 

 The significance of the question of whether McCrary’s had a place of business in Pulaski County, in addition to England and Lonoke, both in Lonoke County, arises from Ark.Stat.Ann. § 85-9^401(l)(c), which provides:
 

 (1) The proper place to file in order to perfect a security interest is ...
 

 (c) ... in the office of the Secretary of State and in addition, if the debtor has a place of business in only one county of this State, also in the office of the clerk of the circuit court and ex officio recorder of such county....
 

 Under the bankruptcy court’s finding that McCrary’s had places of business only in Lonoke County, the failure of American Cyanamid and BASF to file financing statements in Lonoke County required the holding that the security interests were not perfected.
 

 On July 1, 1981, McCrary’s filed a voluntary petition in bankruptcy. BASF and American Cyanamid thereafter filed a complaint seeking relief from the automatic stay in bankruptcy, 11 U.S.C. § 362, alleging that they had properly perfected security interests in McCrary’s inventory and proceeds thereof. McCrary’s filed a counterclaim asserting that BASF and American Cyanamid were unsecured creditors because they failéd to properly perfect their security interests by filing financing statements both centrally and locally.
 

 McCrary’s, owned and managed by Lem-muel C. McCrary, III (McCrary), is engaged in the wholesale and retail farm supply business and has retail stores in Lonoke and England, Arkansas. Its wholesale business is done almost exclusively by telephone. McCrary’s acts as a distributor for several manufacturers of agricultural chemicals, including BASF and American Cyanamid.
 

 Under the distributor agreements with BASF, McCrary’s was able to take delivery of agricultural chemicals only at approved locations. Originally, only the two locations in Lonoke County, Arkansas were approved. In 1978, BASF also approved Central Terminal Warehouse and another warehouse in Memphis, Tennessee. McCrary’s continued to expand and between 1978 and 1981, BASF approved other locations for McCrary’s in Des Moines, Iowa; Kansas City, Missouri; Albany, Georgia; and Greenville, Mississippi.
 

 McCrary’s agreements with other suppliers also provided that merchandise would be kept only at approved locations. Central Terminal was listed as an approved location in those agreements and in various UCC filings.
 

 McCrary’s has had a contractual arrangement with Central Terminal Warehouse since 1978. Suppliers would ship agricultural chemicals to Central Terminal and McCrary’s would buy the chemicals from the supplier’s stock at the warehouse. Ordinarily, McCrary’s notified the supplier that it wanted to obtain a certain product. On two occasions, however, employees of the warehouse called BASF to inform the supplier that one of McCrary’s customers was at the warehouse to pick up a product when McCrary’s did not have such product in stock. BASF in turn contacted McCrary’s and McCrary’s then purchased
 
 *332
 
 the product from BASF. When a sale was made, the supplier instructed the warehouse to effect a stock transfer of the chemicals from the supplier’s inventory to McCrary’s. The warehouse prepared a bill of lading to evidence the transfer and the chemicals were physically separated from the supplier’s stock and moved to another area of the warehouse where they were tagged as McCrary’s. Central Terminal then issued a warehouse receipt on behalf of McCrary’s. After the stock transfer occurred, the chemicals were owned by McCrary’s and became part of its inventory. If the chemicals were not immediately picked up, McCrary’s paid Central Terminal for storage. The storage rate reflected charges for paperwork and for the storage and handling of merchandise. When McCrary’s was ready to have the merchandise removed from the warehouse, Central Terminal prepared a bill of lading on McCrary’s behalf to cover such removal.
 

 The bankruptcy court found that McCrary’s rarely took actual possession of merchandise even after it was separated and tagged as McCrary’s. Instead, McCrary’s would sell the merchandise to another distributor or dealer. Upon completing a sale, McCrary’s would instruct the warehouse to release the merchandise either to the customer or to a common carrier for transportation from the warehouse. Employees of the warehouse would then help McCrary’s customer or the common carrier load the merchandise onto trucks.
 

 McCrary’s did not generally use Central Terminal Warehouse as an address for its business, did not receive mail there, did not keep employees there, did not keep business records there, did not meet customers or creditors there, did not maintain an office there, did not maintain equipment there, and did not have any signs indicating its presence there.
 

 The parties agree that the determination of what constitutes a place of business is a factual issue and we do not differ. The Uniform Commercial Code nowhere defines “place of business.” J. White and R. Summers, Uniform Commercial Code § 23-14 (2d ed. 1980). We thus believe that this determination does not involve a conclusion based on an application of a legal standard, but rather involves a finding based on a non-technical statutory standard closely related to practical human experience. Accordingly, we deal with a question of fact.
 
 Chicago Bank of Commerce v. Carter,
 
 61 F.2d 986, 988 (8th Cir.1932);
 
 Home Powder Co. v. Geis,
 
 204 F. 568, 572 (8th Cir.1913).
 
 [1]
 

 Cf.
 
 C. Wright and A. Miller,
 
 Federal Practice and Procedure: Civil
 
 § 2588;
 
 Pullman-Standard v. Swint,
 
 456 U.S. 273, 286-287 n. 16, 102 S.Ct. 1781, 1788-89 n. 16, 72 L.Ed.2d 66, 78-79, n. 16 (1982);
 
 Commissioner v. Duberstein,
 
 363 U.S. 278, 289-90, 80 S.Ct. 1190, 1198-99, 4 L.Ed.2d 1218 (1960). Consequently, the bankruptcy court’s finding that the warehouse was not McCrary’s place of business is not to be set aside unless clearly erroneous. Fed.R.Civ.P. 52(a);
 
 In re Colonial Service Co.,
 
 480 F.2d 747 (8th Cir.1973).
 

 White and Summers describe two plausible tests for use in making the factual determination of what constitutes a place of business: a “quantity” test, based on how much work was accomplished at a particular location; and a “notoriety” test, which involves the extent to which creditors and others know that the debtor is in fact doing business at the place in question. J. White and R. Summers,
 
 Uniform Commercial Code
 
 § 23-14 (2d ed. 1980). There may be other tests.
 
 [2]
 
 Here the bankruptcy court assigned “weights” to a number of items, and concluded that the “critical mass” of a place of business had not been achieved.
 
 *333
 
 This is a test that has not heretofore been recognized, and one that we believe is somewhat skewed toward a finding that a business operates at only one location. In adopting such an analysis or test to determine whether the warehouse was a place of business, the bankruptcy court laid the foundation for a factual finding that we find to be clearly erroneous.
 

 The bankruptcy court found that McCrary’s customers may have known “well enough” about the warehouse operations, but that “there is relatively little proof that anyone else was so knowledgeable.” It is undisputed, however, that BASF and other chemical companies delivered merchandise to Central Terminal Warehouse and that the warehouse was specified as an approved distribution point in distributor agreements between McCrary’s and its creditors. Central Terminal, along with other warehouses, also was listed in financing statements as one of McCrary’s business addresses.
 

 There are facts in evidence, established clearly and unequivocally, that compel the conclusion that a mistake has been made by the bankruptcy court. We do not have a case where credibility of witnesses is an important issue. Rather, we have un-controverted evidence which was ignored by the bankruptcy court, including written distributor agreements, UCC filings and undisputed testimony concerning McCrary’s business operation.
 

 It appears that the bankruptcy court disregarded the uncontroverted evidence that McCrary’s could not have sold the volume of agricultural chemicals that it sold and could not have serviced the large sales territory it developed without the use of public warehouses such as Central Terminal Warehouse. In 1980, McCrary’s had total sales of approximately forty-five million dollars. Its sales territory extended to Tennessee, Texas, Oklahoma, Louisiana, Missouri, Arkansas, and Georgia. It did not have sufficient storage space for its expected volume. The warehouses provided the storage facilities and were, in essence, distribution centers for McCrary’s. McCrary testified that the basic method of business expansion was by use of warehouses close to the customer. Shipments could be made to McCrary’s customers from the warehouses. Usually commercial truck lines would take the merchandise out of the warehouses. On one occasion, $1.4 million dollars worth of chemicals was shipped from Central Terminal Warehouse to a distributor in Missouri. McCrary’s could offer goods for less because suppliers absorbed charges for transportation to distribution points like Central Terminal Warehouse.
 

 McCrary’s was required to store chemicals in approved locations under the distributor agreements with American Cyanamid and BASF. Central Terminal was included in the list of approved locations. McCrary’s listed Central Terminal Warehouse in North Little Rock as one of its business addresses in financing statements and as an approved storage location in security agreements.
 

 We do not believe that it is necessary to choose between the various tests adopted by text writers or other courts. We conclude, as a matter of practical observation and common sense, considering the economic realities, that under the facts of this case, where the warehouses (not only in North Little Rock but elsewhere) played a substantial role in the business and were used as a critical element in the growth of McCrary’s, Central Terminal Warehouse was an additional place of business for McCrary’s.
 

 A number of reported cases support our conclusion. The debtor in
 
 In re Mimshell Fabrics, Ltd.,
 
 491 F.2d 21 (2d Cir.1974), had its principal place of business in Suffolk County, New York, but operated a salesroom in the offices of an affiliated company in New York County. The bankruptcy court found that the salesroom constituted a second place of business although there were no outside physical indicia of the debt- or’s presence there — the address of the salesroom did not appear on company letterhead,. there was no telephone listing for the salesroom, the salesroom was not listed on the building directory, and the building manager and elevator operators did not
 
 *334
 
 know that the salesroom was there. The Second Circuit affirmed the findings of the bankruptcy court, relying primarily on the fact that the debtor’s presence was known to those “in the trade.”
 

 The debtor in
 
 In re John Adams Henry, Inc.,
 
 5 U.C.C.Rep.Serv. (Callaghan) 795 (Bankr.S.D.N.Y.1968), had its principal place of business in New York County. The debtor’s salesmen, however, often solicited business by telephone from their homes outside New York County, and two of the salesmen stored and delivered merchandise from their homes. The bankruptcy court held that the salesmen’s homes constituted other places of business.
 

 The Arkansas Supreme Court in
 
 Terry Dairy Co. v. Parker,
 
 144 Ark. 401, 223 S.W. 6 (1920), held that a small receiving station constituted a second place of business for purposes of accepting service of process. Terry Dairy Company employed an agent to receive milk from producers and, in turn, ship the milk to the dairy for sale to the public. The agent also kept records of the transactions. The agent worked only part time for Terry Dairy, did not pay out or take in any money for the company, and was not paid to solicit anything.
 

 McCrary’s argues that notoriety is not the proper test to determine place of business. Under the circumstances of this case, we have not found notoriety to be determinative, but only one of the factors which certainly existed. McCrary’s further argues that
 
 John Adams Henry
 
 and
 
 Mimshell Fabrics
 
 are distinguishable because both involved solicitation at the second place of business. Employees of Central Terminal Warehouse did not solicit business for McCrary’s. They did, however, perform stock transfers for McCrary’s and assist in making merchandise available for pick up either by McCrary’s, its customers, or common carriers. Sales involve more than simply solicitation, and we are satisfied that Central Terminal, in contributing to the storage and distribution of merchandise, performed an integral part of McCrary’s sales activity and business. This also answers McCrary’s argument that many transactions must occur at a place of business. We agree with McCrary’s argument that the written documents showing Central Terminal as McCrary’s place of business are not conclusive, but we consider them to be part of the pattern of strong evidence that the warehouse was in fact an additional place of business for McCrary’s.
 

 Decisions such as
 
 Uniroyal, Inc. v. Universal Tire & Auto Supply Co.,
 
 557 F.2d 22 (1st Cir.1977), and
 
 P.S. Products Corp. v. Equilease Corp.,
 
 435 F.2d 781 (2d Cir.1970), are not applicable to this case because both involved a single business location and misapprehension as to whether it was located in a certain county.
 

 We are left with the definite and firm conviction that a mistake has been made and that the court’s finding is clearly erroneous. Central Terminal Warehouse was used as McCrary’s distribution point continuously since 1978, was listed as such in distributor agreements, was listed as one of McCrary’s business addresses in financing statements and was listed as an approved storage location in security agreements. The warehouse performed an integral part of McCrary’s business in the storage and distribution of merchandise and was McCrary’s basic method of business operation and expansion. It was clearly erroneous to find that the warehouse was not a place of business for McCrary’s. BASF’s and American Cyanamid’s security interests were therefore properly perfected by central filing. Ark.Stat.Ann. § 85-9-401(l)(c). Accordingly, we reverse the order of the bankruptcy court and remand the case for further proceedings consistent with this opinion.
 

 [1]
 

 . These cases treat a similar concept, a corporation’s principal place of business for purposes of bankruptcy court jurisdiction, as a question of fact.
 

 [2]
 

 .
 
 In re Mimshell Fabrics, Ltd,
 
 491 F.2d 21, 23 (2d Cir.1974), required that the debtor actually do business at the location, as evidenced by frequent and notorious use; and the Sixth Circuit has categorized what it sees as still another test, one that focuses on whether the debtor actually conducted business activities at a particular place.
 
 Ford Motor Credit Co. v.
 
 Weaver, 680 F.2d 451, 460 (6th Cir.1982).