### In re POCONO AIRLINES, INC., Debtor.

**Bankruptcy No. 5–88–00332.**

United States Bankruptcy Court, M.D. Pennsylvania.

July 18, 1988.

John H. Doran, Robert C. Nowalis, Wilkes–Barre, Pa., for Pocono.

Robert P. Shiels, Andrew Hailstone, Scranton, Pa., for Northeastern Bank.

## OPINION AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

The debtor, Pocono Airlines, Inc. (hereinafter "Debtor") commenced this proceeding requesting this Court to vacate an earlier Order regarding the use of cash collateral entered into between the debtor and Northeastern Bank of Pennsylvania, N.A. (hereinafter "Bank"). For the reasons provided herein, we find that the Bank has properly perfected its security interest in the debtor's accounts receivable and, therefore, we will deny the debtor's Motion to Vacate the Order regarding debtor's use of cash collateral.

As of the filing of this voluntary Chapter 11 proceeding on May 25, 1988, the debtor was indebted to the Bank on five (5) separate loans evidenced by notes and secured by liens on certain aircraft, equipment, mortgages, and security interests in accounts, inventory and general intangibles. On or about May 20, 1988 the Bank setoff approximately $160,000 in the debtor's general operating accounts and approximately $51,000 in the debtor's payroll account. Shortly thereafter, the debtor filed this proceeding and the parties entered into a Stipulation for the use of cash collateral. The debtor claims that shortly after the Stipulation for use of cash collateral was preliminarily approved by this Court the debtor discovered, pursuant to its own investigation, that the Bank did not file a financing statement in Luzerne County, Pennsylvania on the accounts receivable and, therefore, was unsecured as to those accounts. The debtor subsequently filed a Motion requesting the Court to vacate its earlier Order stating that "the debtor's consent to the prior cash collateral order was premised upon the incorrect factual representation that Northeastern Bank held a valid, perfected and enforceable security interest in the debtor's accounts receivable." Further, debtor asserts that "restrictions placed upon the debtor's use of cash collateral unduly restricts the debtor and, there-

fore, places an unnecessary impairment on the debtor's reorganization." (See Motion of Debtor to Vacate Order regarding Use of Cash Collateral at Paragraphs 6 and 7).

The debtor's argument is essentially that it does business in only one County of this Commonwealth, namely Luzerne County, and therefore, the Bank should have filed its financing statement in both the Office of the Secretary of the Commonwealth and in the office of the Prothonotary of Luzerne County in order to perfect its security interest pursuant to the dictates of Uniform Commercial Code § 9–401(a)(3). The debtor's argument suggests the Bank believed the debtor had only one place of business in the Commonwealth, since it attempted to perfect its security interest by actually filing a financing statement with the Prothonotary of Lackawanna County. Debtor further claims Lackawanna was the wrong County in which to file the financing statement. The Bank's response indicates that the debtor has a place of business in more than one county of the Commonwealth and consequently, when it filed its original financing statement in March of 1981 in the Office of the Secretary of the Commonwealth in Harrisburg, it was and continues to be duly perfected on the debtor's accounts receivable. The main issue, therefore, is a factual one centering on whether or not the debtor has a place of business in more than one County in the Commonwealth. We note that other than this issue, no one has contested whether or not, in all other respects, the financing statement at question was properly filed under all the dictates of the Uniform Commercial Code as adopted by the Commonwealth of Pennsylvania.

## DISCUSSION

■ Title 13 Pa.C.S.A. § 9401(a)(3) provides as follows:

**Section 9401. Place of filing; erroneous filing; removal of collateral**

(a) Place of filing—The proper place to file in order to perfect a security interest is as follows:

(3) In all other cases, in the office of the Secretary of the Commonwealth

and in addition, if the debtor has a place of business in only one county of this Commonwealth, also in the office of the prothonotary of such county, or, if the debtor has no place of business in this Commonwealth, but resides in the Commonwealth, also in the office of the prothonotary of the county in which he resides.

In determining what constitutes a "place of business", we find guidance in the case of *In re McCrary's Farm Supply, Inc.*, 705 F.2d 330 (8th Cir.1983) which provides at Page 332 the following:

> "The Uniform Commercial Code nowhere defines 'place of business'. *J. White & R. Summers Uniform Commercial Code*, § 23–14 (2d ed. 1980). We thus believe that this determination does not involve a conclusion based on an application of a legal standard, but rather involves a finding based on a non-technical statutory standard closely related to practical human experience. Accordingly, we deal with a question of fact. (citations omitted)."

Courts have formulated a number of tests when making a factual determination as to what constitutes a "place of business". *In re McCrary's Farm Supply, supra*, at 332 further provides:

> "White and Summers described two possible tests for use in making the factual determination of what constitutes a place of business: a 'quantity' test based on how much work was accomplished at a particular location; and a 'notoriety' test which involves the extent to which creditors and others know that the debtor is in fact doing business at the place in question." (citations omitted).

The Court describes, in a footnote, other tests such as the one used in *In re Mimshell Fabrics Company, Ltd.*, 491 F.2d 21, 23 (2d Cir.1974), which required that the debtor actually do business at the location as evidenced by frequent and notorious use and a Sixth Circuit test found in *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 460 (6th Cir.1982) which focuses on whether the debtor actually conducted business activities at a particular place. Still other courts focus on whether there is frequent use by the debtor of that location in the production of revenue. See *In re Alsted Automotive Warehouse, Inc.*, 16 B.R. 926 (Bankr.E.D.N.Y.1982) at pages 929 and 930 (citations omitted). This Court, like the *McCrary* court also finds it unnecessary to choose between the various tests cited above and we base our conclusion on practical observation and common sense considering the economic realities presented by the facts of this case.

The debtor herein seems to base its whole argument on its claim that the debtor had a "principal" place of business in Luzerne County. The issue of the "principal" place of business is not the one with which we are concerned. UCC § 9401(a)(3) does not speak to where the "principal" place of business is, but whether the debtor has a place of business in one or more counties of the Commonwealth. In fact, the debtor's Brief submitted at the time of the hearing does not discuss case law or this issue whatsoever, but concerns itself with the hardship the debtor might suffer if the debtor did not have unrestricted use of its cash collateral, viz a viz, negotiations with new airlines.

Initially, we note the Wilkes-Barre/Scranton International Airport, is in fact physically located in both Luzerne and Lackawanna County. The debtor argued that the physical plant, letterhead and payment of taxes all indicate a Luzerne County address. We are hard pressed at this point to make a determination that an airline which has its physical plant in one county in an airport that is actually situate in two counties in fact only does business in one of those two counties. More compelling than this observation is the fact that the debtor has been doing business at the Philadelphia Airport for many years.

The debtor argues that individuals using the services of the debtor from the Philadelphia Airport would in fact contact U.S. Air for ticket information and by implication argued that Philadelphia is not the type of location to which customers and creditors of the debtor would normally resort to communicate or trade with the debt-

or or engage in commercial transactions or look for credit information. The debtor also made the same argument concerning the airline's use of the airport at Williamsport, Pennsylvania. The debtor argues that there are no physical indicia of the debtor doing business at those airports, such as signs, employees, telephone numbers, and mailing addresses. If all of debtor's creditors were customers seeking the services of the airline, then perhaps debtor's argument of a lack of physicial indicia of the debtor's presence at the airport would be compelling. But, the debtor has overlooked that not all creditors of this airline are individual customers, but are, in fact, trade creditors and trade creditors in the same industry. Once again, we find much guidance in *In re McCrary's Farm Supply, supra,* which presents a situation in which a warehouse played a substantial role in the overall operation of the principal business which was located in a different place. Like the instant case, *McCrary* involved a factual issue concerning whether the debtor had a place of business in more than one county thus requiring only central filing. The Court described the activity of the place of business under scrutiny in *McCrary,* namely a warehouse in a county other than what was claimed to be debtor's place of business, as follows:

"McCrary's did not generally use Central Terminal Warehouse as an address for its business, did not receive mail there, did not keep employees there, did not keep business records there, did not meet customers or creditors there, did not maintain an office there, did not maintain equipment there, and did not have any signs indicating its presence there."

The court, discussing the case of *In re Mimshell Fabrics, Ltd., supra,* wrote as follows:

"The bankruptcy court found that the salesroom constituted a second place of business although there were no outside physical indicia of the debtor's presence there the address of the salesroom did not appear on company letterhead, there was no telephone listing for the salesroom, the salesroom was not listed on the building directory, and the building manager and elevator operators did not know that the salesroom was there. The Second Circuit affirmed the findings of the Bankruptcy Court, relying primarily on the fact that the debtor's presence was known to those 'in the trade'." See *In re McCrary's Farm Supply, Inc., supra,* at 333 and 334.

*Mimshell* also presented a question of whether a business had more than one place of business in different counties of the same state. Here, the debtor purposefully kept its presence in one county quiet so as not to confuse potential customers. Nevertheless, testimony revealed that the different places of business where known to those people who dealt with the debtor. See *Mimshell, supra,* at pp. 22–23.

Both the *McCrary* and *Mimshell* courts placed emphasis on the economic realties presented by the facts of each case rather than just relying on claims that there were no physical indicia of a business operation at each location under scrutiny. We find this analysis both sound and practical and will adopt it to our review of the facts presented in this case.

Before reviewing the testimonial evidence, we must stress that we are not making an analysis to determine where the "principal" place of business is located, but rather, whether or not such activity exists in locations other than Luzerne County to determine whether the debtor has a place of business in those locations. Testimony of a Mr. Daniel Balish, who was at one point the Executive Vice President and also Chief Executive Officer of the debtor, indicated that the debtor was treated as a regular customer at the Philadelphia Airport. In fact, the debtor had contracted landing rights at the Airport and had also contracted with Texaco for the fueling of its airplanes. Mr. Balish indicated that what actually developed was a "pay as you go" arrangement with Texaco. Mr. Balish also testified that the debtor had a primary contract with U.S. Air which provided staff to handle passengers, tickets and baggage.

Mr. Balish also testified about the flight operations that were conducted in the Williamsport Airport. He considered the Williamsport Airport a place of business and a profitable run for the airline. He indicated all airports that the debtor flew to and from had signs reflecting Allegheny Airlines and the debtor operated in those airports. Mr. Charles Attardo, a Line Captain with the airline from 1979 to 1986, testified that the debtor flew to Williamsport 20 to 30 times a week during most of that period. At the June 30, 1988 hearing, Thomas Gulla, President/Vice President of Marketing, testified that the Philadelphia Airport contributed substantially to the income of the business.

In short, the testimony presents a situation in which a commuter airline flies to airports and has contracted with major creditors for such services as fueling, ticket reservations, passenger and baggage handling at those airports. Additionally, the commuter airline debtor had to obtain landing rights at those airports. Evidence indicated that not only were passengers flown from the Wilkes–Barre/Scranton International Airport to other airports, but that passengers boarded the airline at other airports and consequently, the airline benefited from substantial revenue generated from passengers boarding at those airports.

We now return to the Bank's concluding argument that the creditors which provide goods and services to the debtor at the Wilkes–Barre/Scranton International Airport certainly know that the airport is located in two counties. We simply cannot overlook that the airport is not only located in two counties, but is jointly administered by the Commissioners of both Lackawanna and Luzerne County. We find no real strength in debtor's argument that because the physical plant is in Luzerne County and the address found on the letterhead of the debtor indicated a Luzerne County address that the debtor was not in fact doing business in Lackawanna County. We also regard the filing of the financing statement by the Bank in Lackawanna County in March of 1981, as unnecessary and of no real significance because the Bank was properly perfected by filing in the Office of the Secretary of the Commonwealth.

Consequently, we find the debtor has more than one place of business in the Commonwealth and its filing of a financing statement in the Office of the Secretary of the Commonwealth of Pennsylvania was sufficient pursuant to the dictates of the Uniform Commercial Code as adopted by Pennsylvania to perfect its security interest in debtor's accounts receivable. We, therefore, deny Debtor's Motion.

Finally, we must comment on the unusual procedural posture of this proceeding. While the debtor filed a Motion to Approve the Use of Cash Collateral, the primary issue for consideration was whether or not the Bank had a valid, perfected and enforceable security interest in certain collateral. As such, a Motion to Avoid a Lien is the proper procedural mechanism to bring the issue before the court. However, because of the exigent nature of the case, the court has treated the Motion for Use of Cash Collateral as if a Motion to Avoid a Lien was filed.

We make the above findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.