Robert Brown CAMPBELL, Appellant,

v.

Mrs. Joan A. BARSKY, Administratrix of the Estate of Norton Barsky, Appellee.

No. 17463.

United States Court of Appeals
Fifth Circuit.

April 1, 1959.

---

**464**

Marcus B. Calhoun and Forester & Calhoun, Thomasville, Ga., for appellant.

T. Heyward Vann, Roy M. Lilly and Alexander, Vann & Lilly, Thomasville, Ga., for appellee.

Before HUTCHESON, Chief Judge, and CAMERON and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

While the effort is made by Campbell, the unsuccessful plaintiff in this Georgia automobile collision case, to cast this appeal into errors of law, it turns finally on the formidable undertaking of setting aside the trial court's findings as clearly erroneous. F.R.Civ.P. 52(a), 28 U.S.C.A.

Campbell was driving his Triumph sportscar southbound on a Georgia highway. The other car, a Chevrolet driven by Barsky, who was killed in the wreck, was northbound. Collision took place near the bottom of two hills, the crests of which were about two-tenths of a mile apart. Barsky's car was over on Campbell's right hand side and athwart the lane. Seizing the physical fact that the impact was on his, not Barsky's, side, and that he had gotten back into his own lane 200 feet before collision, Campbell urges that he was not negligent, and that he, not Barsky, should have won. The District Court thought otherwise. After holding that the negligence of Campbell contributed 65% and that of Barsky 35% to the collision, the Court awarded Barsky's administrator 65 % of the claimed damages. Barsky's negligence was speed in excess of 60 miles an hour which, the Court presumably held, was negligence per se under the Georgia Code Ga.Code Ann. § 68–1626 (1957).

Campbell asserts that the Court erred in failing to (a) apply the Georgia rule which required Barsky to exercise ordinary care for his own safety after he discovered the negligence of Camp-

bell; (b) apply the rule that charges a person who is himself violating a traffic law to anticipate that others, like himself, may be engaged in such conduct; and in (c) erroneously holding that Barsky was confronted with a sudden emergency. Neither by a specific assignment of error nor point in the brief does Campbell complain, as such, of the Court's finding that he was negligent.

The nub of the Court's detailed opinion was that Campbell was undertaking to pass another southbound vehicle (driven by Brown) at a time when it was not reasonably safe to do so because of the oncoming Barsky Chevrolet. This was a violation of Georgia traffic laws. Section 68–1637(a) and (b) (1); 68–1640(a), Georgia Code Annotated.

The findings of the Court may be briefly paraphrased. Campbell, in the sportscar, was going about 50 mph. He undertook to pass Brown's vehicle then proceeding about 50 mph. While the two southbound automobiles were abreast and slightly to the south of the crest of the north hill, the Barsky car, at high speed, was seen coming over the crest of the south hill. Campbell and Brown proceeded abreast for 200 to 300 feet to a point about 200 feet away from collision. Brown, in the meantime, apprehensive that there was going to be a "mess" had put on his brakes to allow Campbell to overtake him. Barsky was, of course, coming down the south hill. At about the time Campbell started to pull back into his own right hand lane ahead of Brown, Barsky was more than one-half of the way down the south hill. With not more than 400 to 500 feet interval between the approaching cars, Barsky apparently thought that Campbell might not complete the overtaking and to avoid head-on collision with the oncoming Triumph he swung his Chevrolet partly onto the right shoulder of the road. Barsky's right wheels ran 174 feet on the shoulder until the car came in contact with a partially concealed drainage culvert. This whipped the car, in a longitudinal space of 42 feet, across the high-

way and into the path of Campbell's sportscar. Campbell obviously sensed the danger for after allowing for reaction time his skid marks ran for 48 feet.

█ Georgia recognizes the doctrine of sudden emergency. Cone v. Davis, 1931, 66 Ga.App. 229, 233, 17 S.E.2d 849, 853. Whether it was an emergency as such, and whether it was sudden are, by the very nature of things, questions of fact for resolution by the fact finder whether it be court or jury. A part of this may be whether the emergency was caused or brought about by the one claiming the right to take emergency action. As to all of the elements there was ample basis for the Court's detailed findings. On the last, the Court found that Barsky's speed, while negligence, did not create the emergency nor contribute to its creation.

Concerning the other elements, we think there can be no real question. At first a thousand feet (two-tenths of a mile) seems to be a considerable distance. But neither Campbell's nor Barsky's conduct is to be measured alone by conditions existing while the cars were so far separated. The duties were continuous. Campbell ran for nearly 300 feet before he overtook Brown's car. He knew, of course, that Barsky was coming on. When Campbell pulled back into his lane, he was scarcely 200 feet away from impending collision. That was not more than 3 seconds—a time interval no longer than required to repeat aloud the words, "one thousand and one, one thousand and two, one thousand and three." Barsky, more than half way down his hill, likewise faced little distance and less time. Days or months later it is perhaps easy to see that had Barsky kept on in his right lane without pulling onto the shoulder the passing would have been made without difficulty. But Barsky, with but 3 seconds for decision could only react instinctively. Four to five hundred feet—with the interval closing at 160 feet per second—separated him and the two oncoming vehicles which monopolized the highway. Would the sportscar succeed in passing Brown? Would

Brown give way? Would the sportscar drop back? Barsky did not know the answers. He could not find them out. In the twinkling of an eye, it seemed best for him to give way onto the shoulder. The Court was eminently justified in concluding that, if that were a mistake, the emergency created by Campbell's persistence brought it on.

Of course, once Barsky was entitled to make the *in extremis* choice of getting onto the shoulder, there is no basis, save the occurrence itself, to suggest that it was negligence to run into or over the partially concealed culvert. Nor, having been put in this predicament by Campbell's action, was Barsky to be held negligent as a matter of law for not immediately whipping back onto the highway once he saw that the sportscar, by a margin of scarcely a second, had made it back to the right hand lane. The statutory mandate that "In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within 100 feet of any vehicle approaching from the opposite direction," Georgia Code 68–1637(a), is not meant to test the ultimate legal responsibility "by the providential fortune of the careless or foolhardy." Deitz v. Greyhound, 5 Cir., 1956, 234 F.2d 327, 334.

■ We may assume that the Court might have thought that the apprehensions of Barsky were ill-founded and his actions a kind of carelessness for which he, not Campbell, would have to bear the consequences. Conflicting inferences were open to the trier. The Court drew those substantially exonerating Barsky. For us to overrule them requires that we hold as a matter of law either that reasonable men could not possibly make such a finding, or that the result leaves us with a conviction that an injustice has been done. United States v. United States Gypsum Co., 1948, 333 U. S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746; Galena Oaks Corp. v. Scofield, 5 Cir., 1954, 218 F.2d 217, 219. This record would justify neither basis.

Affirmed.