APEX MINING COMPANY, Inc., a Corporation, Appellant,

v.

CHICAGO COPPER & CHEMICAL COMPANY, a Corporation, Appellee.

No. 17703.

United States Court of Appeals Eighth Circuit.

Feb. 5, 1965.

Samuel Richeson, of Dearing, Richeson, Weier & Roberts, Hillsboro, Mo., made argument for appellant and filed brief.

Alphonso H. Voorhees, of Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo., made argument for appellee and filed brief.

Before MATTHES, BLACKMUN, and RIDGE, Circuit Judges.

RIDGE, Circuit Judge.

This is the third time this case has been before this Court. The facts giving rise to this protracted litigation are with

usual definitude stated by the late Judge John B. Sanborn of this Court, in Chicago Copper and Chemical Company v. Apex Mining Company, 281 F.2d 530 (8 Cir. 1960), and reverse title, at 306 F.2d 725 (8 Cir. 1962). Self-protection against delusion compels one to look at the clarity of facts there stated and adjudications made in the above-cited opinions. When that is done it is apparent it would only be supererogatory for us to try to expatiate thereon, or upon the facts stated by District Judge Harper at 226 F.Supp. 941, which give rise to this *last* appeal. Therefore, interested precisionists are referred to the above-cited authorities for all background facts involved in this appeal.

At 281 F.2d 530, we reversed and remanded this case, primarily because of findings made by the Trial Court to the effect that Chicago Copper, etc. had repudiated the contract here sued on as being contrary to the weight of the evidence and clearly erroneous. Thereafter, on remand the District Court entered judgment in favor of Chicago Copper, etc. in the amount of $12,009.85, which represented damage of $1.00 per ton for the substituted ore purchased by Chicago Copper during the contract period as a result of Apex's breach of contract. We held there was no adequate evidentiary basis for that award of damages and again remanded this case for further consideration of the amount of damages (306 F.2d 725).

In the last-cited opinion we noted that two questions were presented in connection with the issue of damages: (1) the extent of Chicago Copper's diligence to mitigate its damage, which would bear on its claim for full excess paid for substituted ore; and (2) whether or not special damages had been contemplated by the contracting parties at the time of integration of the contract sued on. We there noted that these were fact issues which could only be determined by the Trial Court. (306 F.2d, l. c. 731.)

At retrial of such issues, District Judge Harper reached the conclusion that Chicago Copper had not taken reasonable efforts to mitigate its damages by procuring substitute ore at a reasonable price. From his consideration of the evidence he pointed up the fact that during the contract period Chicago Copper bought 1,750 tons of ore with an extremely low iron content for which it paid $21.50 per ton, which was $3.90 per ton over the price of similar ore contemplated at the contract price. That the seller of that ore had other ore available for $18.50 per ton which was within the contract specifications but which did have a higher iron content. He also found that during the contract period another mining company had ore available at $15.50 per ton, but that company was not approached by Chicago Copper. An individual miner testified that he had ore available meeting the contract specifications, but he also was not contacted by Chicago Copper. Both of the latter producers were located in the Missouri ore field, as was appellant. There was other testimony as to the availability of ore, but because of the evidence adduced in relation thereto it was not relied on by the Court. Recognizing that Chicago Copper actually paid $5.26 per ton over the contract price; and considering the sweep of the testimony as above stated, as well as other relevant factors, Judge Harper found appellant's actual damages to be $3.00 per ton for the substituted amount of ore purchased by it. Further finding that special damages were not contemplated by the parties and that Chicago Copper had no justification for expenditures claimed on that score, a judgment of $36,029.55 was entered in favor of Chicago Copper, and such is the premise of the judgment on appeal now before us.

Appellant does not attack the scheme of damages *per se* as found by Judge Harper, but rather, points to specific elements included within the range of such damages. Appellant seizes on a statement of the Trial Court, that the iron content in the substitute ore was not taken into account in setting the damages, but this, we think, has little relevancy. The contract sued on was entered

into because Chicago Copper needed barium sulfate in its manufacturing process; its negative interest in the amount of iron present was purely incidental. Iron present in the ore here considered in quantities over 3% did cause problems with appellee's machinery operations. The contract sued on provided that the price was determined by the barium content of the ore, and any amount of iron, from 0 to 3%, made no difference in the price. A fair reading of Judge Harper's opinion *ante* reveals that actually he did consider the iron content in making his decision here—in that appellee did not make reasonable efforts to mitigate its damages, by paying an excessive price, partly the result of purchasing substantially iron-free ore.

As to appellant's arguments concerning specific portions of the damages allowed, it is clear that such was a question of fact for the Court, sitting without a jury, and, under Rule 52(a), F.R.Civ.P., must be accepted by this Court unless clearly erroneous. United States v. Horsfall, 270 F.2d 107 (10 Cir. 1959); United States v. Guyer, 218 F.2d 266 (4 Cir. 1954); Grant v. United States, 271 F.2d 651 (2 Cir. 1959). A finding is clearly erroneous when the reviewing court has a definite and firm conviction that it is a mistake, viewed in the light of all the evidence. This is so, even though there is some evidence to support the finding. United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954). This Court has often stated that findings are clearly erroneous only when not supported by the evidence, or contrary to the weight of the evidence. Western Casualty & Surety Company v. Herman, 318 F.2d 50 (8 Cir. 1963).

Turning to appellant's specific allegations of error, we find it argued that damages should not have been allowed on 332.07 tons of ore received from A. W. Wood during the first nine days of January, 1957, as this ore " * * * must have been purchased and shipped in De-

cember (1956) or earlier." Although the documentary evidence does not show the date this ore was ordered, the uncontradicted testimony of Chicago Copper's president was to the effect that it was shipped during the latter part of December, 1956, well within the contract period. As entered into on December 8, 1956, appellant's contract envisaged delivery of ore commencing immediately. Hence, it cannot be said that it was clearly erroneous for the Trial Court to find that ore received in early January, 1957, was received under this contract.

Appellant next urges that no damages should have been allowed on any of the ore purchased after September 1, 1957, a total of 6192.49 tons. Appellant's reason for this is that all "purchases * * * after September 1, 1957 were of ore either totally lacking in iron or containing only a trace," and that this ore was " * * * a premium quality * * * at a premium price * * * ". Such argument appears to be this—that a performing party who does not use all possible means to mitigate the defaulter's damages is not to receive any damages, at all, and is apparently based on a misinterpretation of language contained in this Court's opinion, at l.c. 731 of 306 F.2d. Contrary to appellant's thinking, that opinion did not place any burden on appellee, but rather, clearly stated that the burden was on appellant, as the defaulting party, to prove any elements in mitigation of damages. We refer to the excerpt from In re Kellett Aircraft Corp., 186 F.2d 197, l.c. 199 (3 Cir. 1950), quoted by Judge Sanborn in his last-cited opinion *ante*, as showing the proper perspective in which the rule of mitigation of damages should be considered. Cf. 5 Corbin on Contracts, § 1039. As to the specific point of mitigating damages, see 25 C.J.S. Damages § 33, p. 502, where it is stated:

"A failure to attempt to mitigate damages will not bar plaintiff entirely from a recovery, but will only prevent the recovery of such damages as might have been avoided by reasonable efforts upon his part."

Noted approvingly by Courts of the State of Missouri, in Cline v. City of St. Joseph, 245 S.W.2d 695 (K.C.C.A.1952); also see Faire v. Burke, 252 S.W.2d 289 (1952); Lokey v. Rudy-Patrick Seed Co., 285 S.W. 1028 (K.C.C.A.1926), which is controlling law in the case at bar, premised as it is on diversity of citizenship.

 Appellant's assertion of error that the inclusion of 1492.31 tons of ore purchased between April 15, 1957, and August 15, 1957, in the computation of the amount of damages allowed because it had ore available at a price less than was actually paid by appellee for substitute ore during this period, is without any merit. Such matter may be considered in mitigation, but is insufficient to prevent appellee from recovering any damages. There is an additional factor here present. The correspondence between the parties reveals that ore was not purchased from appellant because appellant would not waive appellee's right to claim damages for appellant's previous breach of contract. It is evident from the content of such correspondence that in accepting appellant's belated offers appellee considered it would have been accepting many departures from what it had a right to demand under the breached contract. The quality of ore would have been different, the price would have been different, and additional conditions in appellant's favor would have been added. This, appellee was not required to do. This question arose in the early Missouri case of Creve Coeur Lake Ice Co. v. Tamm, 90 Mo.App. 189 (1901), stating controlling law, wherein it was stated:

> "* * * it savors of oppression to compel a performing party to a contract to enter into new relations with a person who has willfully broken his obligation, solely to protect the latter from loss."

To the same effect, see Campfield v. Sauer, 189 F. 576 (6 Cir. 1911).

There is no merit to appellant's complaints concerning the amount of damages as allowed by the court below. That Court properly applied the rule as to mitigation of damages and made its findings on the basis of the evidence before it. All such findings are supported by competent evidence. Consequently, the judgment appealed from is

Affirmed.