**McGUIRE FURNITURE RENTAL CO.,**
Plaintiff–Respondent,

v.

**Thomas E. MERTA,**
Defendant–Appellant.

No. 54831.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 27, 1989.

Lawrence F. Hartstein, Clayton, for defendant-appellant.

Mark M. Wenner, Clayton, for plaintiff-respondent.

STEPHAN, Judge.

Thomas E. Merta appeals from the trial court judgment awarding damages of $4,080.16 plus interest to respondent McGuire Furniture Rental Company in its contract action against Merta. We affirm.

Explaining that the facts and law in this matter were complex, the trial court entered a six page judgment. Its judgment and the record disclose the following facts. Robert McGuire owned two businesses, a furniture rental and sales company and also a moving and storage company. Appellant was a sales representative for Electronic Directory Services, Inc. ("EDS"), a directory advertising service which provided the public with information about its clients by telephone. On March 17, 1986,

respondent McGuire Furniture Rental Company entered into a written contract with EDS. McGuire Moving and Storage also entered into a similar contract that same day. On each contract the fee amount for year-long service, effective June 1986, was $3,120.00 with three payments of $1,040.00 scheduled. Robert McGuire wrote out two checks, each for $520.00, as down payment by each company for the directory service. EDS credited both checks to the single account of McGuire Moving and Storage.

How respondent was to have paid EDS its contract price of $3,120.00 is disputed. The parties agree that in lieu of cash, respondent was to provide appellant Merta certain items of furniture for his apartment on a "swap" basis. Appellant, a vice president of EDS, was to take furniture with a cash value of $3,120.00, directly from respondent rather than drawing from EDS his fifty percent commission totalling $3,120.00 for the two subscriptions he had solicited. Whether appellant's receipt of the furniture was an element of a sale or rental agreement is at issue here.

Appellant picked out certain furniture, including a sofa, a loveseat, a bedroom set, and a dining room table with chairs. Before respondent delivered the furniture to appellant, appellant upgraded his selection for the sofa and loveseat. The furniture was delivered intermittently, within the last week of March and first two weeks of April 1986. Estimates of the wholesale value of the furniture delivered ranged from $3,100.00, one year's rental, or $2,900.00, one-half the retail price of $5,800.00.

Several months later, on June 16, EDS sent McGuire Moving and Storage a bill for $1,040.00, the amount due as a second payment under the terms of the original contract. The bill reflected $1,040.00 as the amount previously paid. In response, by letter dated July 9, 1986, McGuire Moving and Storage expressed that EDS had not "lived up to the contract agreement" and demanded a refund of the original $1,040.00 paid to EDS.

On July 25, 1986, appellant signed a McGuire Furniture Rental invoice stating that he owed McGuire Furniture Rental $1,040.00 for "furniture purchased." The document showed a payment of $240.00 was made that day. Another payment of $200.00 was made on August 9, 1986, leaving a balance of $600.00 due.

On September 25, 1986, Robert McGuire, with five employees of his moving company, came to appellant's apartment to take the furniture, or to be paid. Feeling coerced, appellant issued two different checks for $1,000.00 to McGuire. On both checks, appellant noted "Pmt. for furniture." Appellant promptly stopped payment on both checks and they were not honored by the bank on which they were drawn.

In October 1986, respondent prepared sales tickets reflecting $5,800.69 as the total amount due for the furniture delivered to appellant. Respondent admitted backdating the sales tickets to July 17, 1986. Sometime later, respondent brought this contract action against Merta to collect payment for the furniture and the return of the $1,040.00 paid to EDS. Respondent characterized the original agreement between respondent and EDS as a one-year furniture rental but claimed that, after EDS had failed to perform any contractual services, Merta agreed to purchase the furniture from respondent for a reasonable sum.

Appellant contends the evidence unequivocally shows that the original agreement between respondent and EDS was to be for a sale of furniture, not a rental. Appellant's first point disputes the trial court's findings of fact that the original "swap" of directory services for furniture was a one year rental of furniture; that appellant agreed to personally pay for the furniture; that appellant either in March or in July 1986 (by his conduct) agreed to some reasonable purchase price; that $4,900.00 was a reasonable value for the sale of the furniture; and that McGuire would sell $5,800.00 worth of furniture to a new and

strange company for future services to be rendered was incredible.

Because this matter was tried to the court, the appellate court must sustain the judgment of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ We have carefully reviewed the transcript and exhibits. We agree with the trial court that many of respondent's documents are not "reliable," since "[m]any of them were reconstructed at a later date to reflect what [respondent] believed were the facts at an earlier date." Most damaging to respondent's position is a comparison between exhibits 2 and N. Exhibit 2, offered into evidence by respondent, was McGuire's copy of the original service contract of March 17, 1986, with EDS. At the bottom of the form was noted " 'trade for furniture' rental." Several lines had been drawn through the word "rental" and, immediately underneath, "sale" was handwritten. Under McGuire's signature, a similar strike-out occurs over the word "owner" and "president" is written. McGuire testified he wrote "rental" on the contract and that he wrote "sale" on exhibit 2 *after* appellant decided he would buy the furniture.

Exhibit N, offered by appellant, is the original contract of which exhibit 2 is a copy and to which McGuire had no access after March 17, 1986. Nonetheless, exhibit N also contains the word "sale" in McGuire's handwriting. Appellant persuasively argues that his copy of the original service contract containing the word "sale" conclusively establishes the original transaction was a sale and not, as respondent has stated, a rental later converted to a sales transaction. Had the transaction been intended as a rental originally but later changed to a sale, appellant observes that exhibit N, his copy of the original

contract, would not contain the word "rental" as stricken or the word "sale." Appellant emphasizes McGuire's inability to explain when or why he ever wrote "Sale" on the original document.

Neither the trial court nor respondent directly address appellant's contention. Instead, they consider, as we must, other evidence supporting respondent's position. This evidence includes respondent's subsequent demands to appellant that he return the furniture, indicating (to the trial court) "a belief that [respondent] had not relinquished all property interests in it." Furthermore, in the face of respondent's demands for the return of the $1,040.00 paid and the furniture received, appellant made payments of $240.00 July 25, 1986, and $200.00 on August 9, and, later in September, two $1,000.00 checks notwithstanding his subsequent claim of coercion. Appellant's payments are consistent with respondent's contention that only a rental was agreed to in the March transaction, and that these subsequent payments were toward the purchase of the furniture.

■ Appellant left EDS June 13, 1986. McGuire testified that after appellant left EDS, Merta came to McGuire and agreed that the rental be changed to a sale so Merta could keep the furniture. Appellant admitted that he had not received all the furniture ordered when he spoke with McGuire in June over McGuire's disgruntlement with EDS. Merta "guessed" the last of the furniture arrived in August.

Evidence that respondent continued delivery of furniture to appellant, even after respondent knew appellant had left EDS, and especially after respondent had notified EDS on July 9 of his dissatisfaction with EDS, strongly suggests appellant had agreed to purchase the furniture from respondent. This evidence, in tandem with appellant's own signature on exhibit eight, an invoice from McGuire Furniture Rental, acknowledging that he owed $1,040.00 "for furniture purchased," is substantial evidence supporting the trial court's conclusion that appellant had "agreed to personally pay for the furniture."

■ Appellant disparages the credibility of respondent and his brother whose testimony appellant claims is the only basis for the trial court's conclusion that appellant agreed to buy the furniture. He dismisses the reliability of exhibit eight iterating that it was obtained under duress. The record is totally bereft of evidence that appellant signed this exhibit under duress. As for the credibility of witnesses, respondent's version of events appears no less believable than appellant's. Where there is a conflict in the evidence, the trial court has the prerogative to determine the credibility of the witnesses, accepting or rejecting all, part or none of the testimony. *Estate of Smith*, 767 S.W.2d 29, 33 (Mo. banc 1989). Where credibility of witnesses is involved, we defer to the superior position of the trial court.

■ Appellant further disputes the trial court's conclusion that appellant agreed to pay "some reasonable *purchase* price, rather than the rental price already established." Notwithstanding appellant's contention to the contrary, respondent testified that, while the parties never discussed a price, appellant had agreed in July when he signed exhibit eight, the invoice, that he would pay respondent a fair and reasonable price.

■ We are also satisfied with the trial court's finding that $4,900.00 was a reasonable value for the sale of the furniture. Appellant himself valued the property as being worth $3,120.00. McGuire agreed with his son's quote of $4,900.00 as a fair and reasonable price. The trial court, observing that appellant had the possession and use of the furniture for nearly two years at the time of trial, agreed with respondent's assessment of a fair price. Whether certain items of furniture (bedding and some tables) included in that price which appellant disputes ever having received was, again, a matter of credibility for the trier of fact to resolve, *Wingo v. Senn*, 766 S.W.2d 488, 489 (Mo.App.1989). We find no reason to interfere with the determination of the trial court.

■ Appellant's final attack on the trial court's findings of fact is leveled at the court's statement that "it is not believable that Mr. McGuire, an older, experienced businessman would sell and give up all claim to some $5,800 (retail value) worth of furniture to a new and strange company for services to be performed in the future."

We agree with appellant that respondent's business procedure is certainly not a "fine science"; however, Robert McGuire's testimony about his background and his company bespeaks a degree of business acumen. The record, thus, supports the trial court's fact findings *in toto*. Appellant's first point is denied.

■ Appellant's second point contends the trial court erred in ruling that he pay respondent a reasonable sum for the furniture in his possession. He argues that his retention of the furniture was not inequitable because he received the furniture in lieu of receiving his cash commission from EDS. Thus, any benefit conferred by McGuire was received by EDS, not appellant. He concludes that the services he rendered to EDS are tantamount to his payment for the furniture, so requiring him to pay respondent exacts a double payment from him.

We agree with the trial court's judgment ordering appellant pay respondent for the furniture, despite appellant's protestations of having received the furniture as his sale commission. The trial court found the original agreement between EDS and respondent to have been a rental. Under this view, when the swap was originally arranged, appellant was entitled to receive, in essence, one year's worth of rental furniture as his commission. Respondent, after having rented furniture valued at $4,900.00 and having paid $1,040.00 in cash to EDS, became dissatisfied with the directory services which were, by appellant's own admission, "meek" and only for "one day." McGuire sought the return of the furniture. That appellant should forego his commission upon termination of the contract between EDS and respondent is not uncommon in the sales world. Further, the arrangement for payment of appellant's

commission is a matter strictly between EDS and appellant. How and when appellant accepted EDS's terms for his commission is irrelevant to respondent's demand for the furniture's return. We see no inequity in compelling appellant to pay respondent for the rental furniture in his possession after he agreed in July to pay for the furniture rather than return it to respondent. Appellant's second point is denied.

■ Appellant's final point disputes the trial court's award of $596.20 in prejudgment interest from July 25, 1986, the date of the invoice signed by appellant acknowledging he owed respondent money for the furniture. Appellant claims neither was his liability fairly certain nor was the determination of damages "fairly certain" under *Catron v. Columbia Mutual Insurance Co.*, 723 S.W.2d 5, 8 (Mo. banc 1987), or "readily ascertainable by computation" under *Ehrle v. Bank Building & Equipment Corporation of America*, 530 S.W.2d 482, 496 (Mo.App.1975). Appellant cites *Fohn v. Title Insurance Corp. of St. Louis*, 529 S.W.2d 1 (Mo. banc 1975), in support of his claim that, as a general rule, interest is not recoverable on an unliquidated demand.

The same claim was recently raised in *Baum Properties, Inc. v. Columbian National Title Insurance Co.*, 763 S.W.2d 194 (Mo.App.1988). In *Baum Properties*, the Western District observed that, when the Missouri Supreme Court had reexamined *Fohn* in *Catron v. Columbia Mutual Insurance Co.*, 723 S.W.2d 5, 7 (Mo. banc 1987), the Supreme Court noted that *Fohn* restated the general rule but did not eliminate the interpretations and exceptions, including the exception which allows interest when the amount of damages may be ascertained by reference to any recognized standard. *Baum Properties, Inc.*, 763 S.W.2d at 203. The Western District, adhering to the reasoning in *Catron*, found no error in the trial court's entry of a judgment which included an award of prejudgment interest. 763 S.W.2d at 203.

In *General Aggregate Corp. v. Labrayere*, 666 S.W.2d 901, 909 (Mo.App.1984), this court held that merely because an action is in quantum meruit does not render the claim unliquidated. In *General Aggregate Corp.*, we approved the award of pre-judgment interest after the witness testified placing a value upon his own services based upon a compensation he described as a "fair and standard rate." We quoted the following from *Laughlin v. Boatmen's National Bank of St. Louis*, 354 Mo. 467, 189 S.W.2d 974, 979 (1945):

On principle there is no reason for denying interest when the action is in quantum meruit and the claim is unliquidated in the sense that the amount due is to be measured and determined by the standard of reasonable value of the services ... If the defendant is liable for the reasonable value of services he is under a legal duty to liquidate the sum due and interest should be allowed from the time he should have paid ... This principle has been applied often in actions for the reasonable value of work and labor. *General Aggregate Corp.*, 666 S.W.2d at 909–10.

McGuire's testimony that appellant agreed on July 25, 1986, to pay $5,800.69 and that $4,900.00 was a reasonable amount for the furniture in appellant's possession supports the trial court's award of prejudgment interest. Point denied.

The judgment is affirmed in all respects.

SMITH, P.J., and SATZ, J., concur.