The **NODAWAY VALLEY BANK, Appellee,**

v.

**CONTINENTAL CASUALTY COMPANY, Appellant.**

**No. 89–2185WM.**

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1990.

Decided Oct. 16, 1990.

Michael P. Tone, Chicago, Ill., for appellant.

Paul E. Vardeman, Kansas City, Mo., for appellee.

Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and HENLEY, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

The Nodaway Valley Bank brought this diversity action to recover a settlement payment and attorney's fees from Continental Casualty Company, which issued a liability policy that covered only Nodaway Valley's directors and officers. The insured individuals, together with certain uninsured corporations and individuals, paid $500,000 to settle a suit brought by the United Missouri Bank and also incurred a total of $300,497 in attorneys' fees and expenses. The district court,[1] 715 F.Supp. 1458, held that Continental Casualty was responsible for $450,000 of the $500,000 settlement, and $204,134 of the attorneys' fees and costs that were incurred in defending the United Missouri suit. After adding prejudgment interest to the award, the court entered a judgment in favor of Nodaway Valley for $830,860.18. On appeal, Continental contends: (1) that the district court attributed too much of the settlement payment and litigation costs to the insured individuals; and (2) that the court should not have awarded prejudgment interest. We affirm the judgment of the district court.[2]

I.

The details of the underlying dispute between United Missouri Bank and the Nodaway Valley Bank are not material to this case. It suffices to say that after United Missouri bought shares of Nodaway Valley, the directors and shareholders of Nod-

1. The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

2. Nodaway Valley has filed a motion in which it seeks sanctions against Continental Casualty for pursuing a frivolous appeal. See Fed.R.App.P. 38. Although we conclude that Continental Casualty's appeal is not meritorious, we do not believe that it is frivolous. Therefore, we deny Nodaway Valley's motion.

away Valley executed a squeeze-out merger. In a suit filed in a Missouri state court, United Missouri claimed that Nodaway Valley, its officers and directors, its shareholders, and other corporate entities had violated Missouri law by squeezing out United Missouri. That suit ended in two separate settlement agreements. In one agreement, United Missouri received $500,000 to settle the only count of its claim that was directed solely against Nodaway Valley's directors. In the other agreement, United Missouri received nothing in return for settling the remaining counts of its complaint.

Before the district court, Continental Casualty argued that Nodaway Valley's directors could not recover anything because the losses fell within exclusions contained in Nodaway Valley's policy. The district court granted summary judgment against Continental Casualty on that issue.

The district court then heard testimony concerning the appropriate allocation of the fees and expenses and settlement payment. Nodaway Valley presented testimony by attorneys of the law firm of Stinson, Mag & Fizzell, which had represented Nodaway Valley's directors and the other defendants in the suit brought by United Missouri. Those attorneys testified that the entire $500,000 settlement payment was attributable to the portion of United Missouri's complaint that was directed against only the insured directors. They also testified that $226,816 of fees and costs were incurred in defending Nodaway Valley's directors.

Continental Casualty presented testimony of its claims manager and William H. Bates, an attorney experienced in business litigation who was President–Elect of the Missouri Bar when he testified. Bates testified that seventy to eighty percent of the settlement payment and costs should have been allocated to the corporate holding company that had been used to effect the squeeze-out merger.

After hearing the testimony, the court concluded that "[a]llocating 10% of the responsibility for the settlement to noninsured parties seems almost generous under the circumstances." *Nodaway Valley*

*Bank v. Continental Casualty Co.,* 715 F.Supp. 1458, 1467 (W.D.Mo.1989).

## II.

Continental Casualty challenges the district court's decision to allocate ninety percent of the settlement responsibility and a similar percentage of the attorneys' fees to the insured directors. A threshold question is what standard should govern our review of that decision.

### A.

■ Continental Casualty argues that allocating the settlement payment and costs involves a mixed question of law and fact that we should review de novo. Nodaway Valley argues that the allocation decision is a finding of fact that we should review only for clear error.

The Supreme Court has recognized on more than one occasion "the vexing nature of the distinction between questions of fact and questions of law." *Pullman–Standard v. Swint,* 456 U.S. 273, 288, 102 S.Ct. 1781, 1790, 72 L.Ed.2d 66 (1982). The *Pullman–Standard* Court stated: "Rule 52(a) does not furnish particular guidance with respect to distinguishing law from fact. Nor do we yet know of any other rule or principle that will unerringly distinguish a factual finding from a legal conclusion." *Id.* The Court reiterated these observations in *Cooter & Gell v. Hartmarx Corp.,* —— U.S. ——, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), again offering no simple prescription and focusing instead on whether the district or appellate court was "'better positioned'" to make a particular determination. *Id.,* 110 S.Ct. at 2458–60.

This court has also considered the fine distinctions between legal and factual questions. In *United States ex rel. Morris Construction, Inc. v. Aetna Casualty Insurance Co.,* 908 F.2d 375 (8th Cir.1990), and in *In re McCrary's Farm Supply, Inc.,* 705 F.2d 330 (8th Cir.1983), our analysis focused on whether the question at issue required the application of a technical, legally oriented standard or whether it required the application of a non-technical, factually oriented standard. Using these

principles, we found that the term "subcontractor" as used in the Miller Act had a sufficiently technical meaning that it presented a mixed question of law and fact that should be reviewed de novo. *Morris Construction*, 908 F.2d at 377–78 & n. 4. In contrast, in *McCrary*, we held that what constitutes a "place of business" was a factual question because it was based on a "non-technical statutory standard closely related to practical human experience." 705 F.2d at 332.

We have recently considered a question similar to the one before us, and held that a district court's determination of the percentages of responsibility for a judgment based on constitutional violations should be reviewed under the clearly erroneous rule. *Jenkins v. State of Missouri*, 855 F.2d 1295 (8th Cir.1988), *aff'd in part and rev'd in part on other grounds*, —— U.S. ——, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990) (apportionment of seventy-five percent responsibility to the state for desegregation costs and twenty-five percent to the school district). We are satisfied that apportionment of the responsibility for the covered and non-covered settlement amount, fees and expenses similarly presents a factual issue.

Cases concerning the apportionment of liability under comparative fault are also illuminating. In *Mandel v. United States*, 793 F.2d 964 (8th Cir.1986), we stated that apportionment of fault under the Arkansas comparative fault statute is a question for the fact finder and reviewable only for clear error. *Id.* at 969. In *St. Hilaire Moye v. Henderson*, 496 F.2d 973 (8th Cir.), *cert. denied*, 419 U.S. 884, 95 S.Ct. 151, 42 L.Ed.2d 125 (1974), this court stated that the fact finder has the responsibility to "assess the facts and apportion negligence among the parties as he deems proper...." *Id.* at 982. Such an apportionment may be reversed only if clearly erroneous. *Id.* Similarly, in *Chicago & North Western Railway Co. v. Minnesota Transfer Railway Co.*, 371 F.2d 129 (8th Cir.1967), this court applied a clearly erroneous standard to the review of a judgment allowing contribution among tortfeasors. *Id.* at 131. In a Fifth Circuit case, *Campbell v. Barsky*, 265 F.2d 463 (5th Cir.1959), the court

reviewed under the clearly erroneous standard a district court's decision to allocate 65% of the fault in an automobile accident to the plaintiff. *Id.* at 464.

In addition to these cases, numerous Eighth Circuit decisions hold that the calculation and award of damages is a question of fact reviewable only for clear error. *See, e.g., Webb v. Arresting Officers*, 749 F.2d 500, 501 (8th Cir.1984); *Apex Mining Co. v. Chicago Copper & Chem. Co.*, 340 F.2d 985, 987 (8th Cir.1965).

We also observe that the allocation of settlement responsibilities requires a factbound inquiry similar to the type of inquiry required in the determination of negligence or discriminatory intent. The Supreme Court has stated that a finding of intentional discrimination is a finding of fact to be reviewed under the clearly erroneous standard, *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985), and that the determination of negligence is "generally reviewed deferentially." *Cooter & Gell*, 110 S.Ct. at 2459.

Without dispute, the question of whether or not there is coverage under the insurance contract is a legal determination. This issue was decided by summary judgment and is unchallenged. We also recognize that the question of exposure to damages in the underlying case involved legal questions as well as the application of the facts to those questions. The remaining question, however, simply involves how much is covered or not covered by the insurance policy.

At its core, this issue concerns the evaluation of the comparative responsibilities of the particular parties and of their exposure to an award of damages in the underlying suit. Evidence of this evaluation came from lawyers representing the Nodaway bank officers and directors, the claim manager for Continental, and a lawyer testifying as an expert witness, all of whom gave opinions as to the respective liability of the non-insured corporate entities and the insured individual officers and directors. The testimony certainly involved legal theo-

ries of recovery against the parties in the underlying action and an analysis of the facts applicable under those theories. While the inquiry necessarily started with legal considerations, however, the ultimate determination was primarily a judgmental one in which facts were analyzed in light of the controlling law. We are convinced this is in essence a factual inquiry. As a factual issue, it is subject to the clearly erroneous standard. *Bessemer City*, 470 U.S. at 573, 105 S.Ct. at 1511.

Were we to entertain any degree of doubt regarding our characterization of the allocation issue and our identification of the proper standard of review, the recent *Cooter & Gell* decision effectively lays to rest those doubts. In *Cooter & Gell*, the Court decided that a deferential standard should be applied to the review of Rule 11 sanctions. *Id.*, 110 S.Ct. at 2461. Citing *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), the Court concluded that the sound administration of justice requires the district court to resolve fact-specific questions because it is better able to effectively and efficiently do so. *Id.* 110 S.Ct. at 2459–60. Review must be deferential to give the district court the "necessary flexibility to resolve questions involving ' "multifarious, fleeting, special, narrow facts that utterly resist generalization." ' " 110 S.Ct. at 2460 (quoting *Pierce*, 487 U.S. at 561–62, 108 S.Ct. at 2548). Thus, even if we grant Continental its argument that the question before us is a mixed one of law and fact, the issue is sufficiently factual in its essence that the district court is far better able to effectively and efficiently resolve it.

Two circuit courts have adopted approaches similar to that of *Cooter & Gell*. In *Mars Steel Corp. v. Continental Bank*, 880 F.2d 928 (7th Cir.1989), the Seventh Circuit stated that "fact-intensive disputes" should be reviewed under a "deferential standard because the role of appellate courts in establishing and articulating rules of law is not at stake." *Id.* at 933. In *United States v. McConney*, 728 F.2d 1195 (9th Cir.), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984), the court looked at whether the dispute or question

was essentially factual or essentially legal. *Id.* at 1202. If the application of law to the facts requires an inquiry that is based on the fact finder's experience with " 'the mainsprings of human conduct,' " the concerns of judicial administration will favor deference to the district court. *Id.* (quoting *Commissioner v. Duberstein*, 363 U.S. 278, 289, 80 S.Ct. 1190, 1198, 4 L.Ed.2d 1218 (1960)).

Our analysis in *Morris Construction*, which distinguished between technical, legally based questions and non-technical, factually based questions, rests on the same principles considered by the Supreme Court and the Seventh and Ninth Circuits. We are convinced that the allocation of settlement responsibilities requires a non-technical, fact-intensive inquiry. Whether we label the issue factual or whether we simply conclude that the district court is better positioned to determine the issue, our ultimate conclusion is the same—namely, that the district court's decision as to the allocation of settlement responsibilities must be reviewed under the clearly erroneous standard.

### B.

■ The next question is whether the district court's allocation is clearly erroneous. The Supreme Court has admonished lower courts to remember that "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Bessemer City*, 470 U.S. at 574, 105 S.Ct. at 1511. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 573–74, 105 S.Ct. at 1511. " '[A] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Id.* at 573, 105 S.Ct. at 1511 (quoting *United States v. United States Gypsum Co.*, 333

U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

After reviewing the district court's careful analysis of this case, we are convinced that its allocation is not clearly erroneous. The district court first concluded that if the United Missouri suit had gone to trial, the defendants in that suit would probably have prevailed. *Nodaway Valley Bank*, at 1460. We give great weight to the district court's interpretation of state law, *Suburban Newspapers, Inc. v. Kroger Co.*, 886 F.2d 1060, 1062 (8th Cir.1989), and Continental Casualty has not convinced us that the district court's conclusion was incorrect.

The district court then stated that although it was "difficult to allocate exposure in a defense that seemed probably headed for success," *Nodaway Valley Bank*, at 1460, it believed that the greatest risk was borne by Nodaway Valley's directors. In reaching that conclusion, the court was not content to rely upon platitudes about the tendency of juries to attack corporate "deep pockets." Instead, the court noted that the corporate holding company in this case "would likely have been viewed by the jury as essentially a basket for holding stock or a collection of legal papers used by the leading individual defendants." *Id.* at 1460. The court also stated that if the United Missouri "case had gone to trial, the jury would probably have understood that [the holding company] at the time of trial held assets of many innocent shareholders (including aged and infirm persons) whose identity was dramatized by being present as defendants in the lawsuit." *Id.*

Only after thoroughly examining the nuances of the facts before it did the court hold that "[a] realistic and fair appraisal, as of the time of settlement, would ... have allocated about 10% of the exposure to the uninsured defendants ... and 90% to the insured defendants...." *Id.* at 1461. Accordingly, the court held that Continental Casualty was responsible for $450,000 of the $500,000 that had been paid to settle the United Missouri suit. *Id.* at 1466. We conclude that the district court's compre-

hensive analysis of this question is not clearly erroneous.

Similarly, although the district court admitted that it could only estimate the proper allocation of fees and expenses, *id.* at 1461, its allocation is not clearly erroneous.

### III.

■ Continental Casualty next contends that the district court erred by awarding prejudgment interest. According to Continental Casualty, Missouri law permits prejudgment interest to be awarded only if a claim was liquidated. Because the exact amount of Continental Casualty's liability was not clear until the district court entered its judgment, Continental Casualty argues that its claim was not liquidated and it thus should not be liable for prejudgment interest. This argument merits only a brief discussion.

In diversity cases such as this, "[p]rejudgment interest is a matter of substantive state law." *First Am. State Bank v. Continental Ins. Co.*, 897 F.2d 319, 327 (8th Cir.1990). As we have previously stated, we give great weight to the district court's interpretation of state law. *Suburban Newspapers*, 886 F.2d at 1062. In this case, the district court held that prejudgment interest should be awarded because:

> Missouri cases support an allowance for prejudgment interest, even though the claim against the insurer for moneys previously advanced could not be specified until an allocation occurred. *Catron v. Columbia Mut. Ins. Co.*, 723 S.W.2d 5 (Mo.1987) [(en banc)]; *Mauer v. State Employees' Retirement System* [sic], 762 S.W.2d 517 (Mo.App.1988). Defendant insurer has long had the benefit of plaintiff's advances, and should pay for the use of the funds.

*Nodaway Valley Bank*, at 1467.

In *Catron v. Columbia Mutual Insurance Co.*, 723 S.W.2d 5 (Mo.1987) (en banc), the Missouri Supreme Court held that although prejudgment interest is generally "not recoverable on an unliquidated demand" in Missouri, the general rule is subject to exceptions. *Id.* at 6. The court observed that "[i]nterest has traditionally

been used to compensate for the use of or loss of use of money to which a person is entitled." *Id.* at 7. The court "may also consider equitable principles of fairness and justice when awarding prejudgment interest." *Id.*

We believe that the district court's award of prejudgment interest is supported not only by *Catron,* but also by *McGuire Furniture Rental Co. v. Merta,* 773 S.W.2d 878, 883 (Mo.Ct.App.1989), and *Mauer v. Board of Trustees,* 762 S.W.2d 517, 520 (Mo.Ct.App.1988). The district court's interpretation of Missouri law also reflects the concern that unless prejudgment interest is available, compensation will be inadequate and defendants will have an incentive to prolong litigation to take advantage of the time value of money. *See West Virginia v. United States,* 479 U.S. 305, 310–11 & n. 2, 107 S.Ct. 702, 706–07 & n. 2, 93 L.Ed.2d 639 (1987); *General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 655–56 & n. 10, 103 S.Ct. 2058, 2062 & n. 10, 76 L.Ed.2d 211 (1983); *Lorenzen v. Employees Retirement Plan,* 896 F.2d 228, 236–37 (7th Cir. 1990); *Gorenstein Enter., Inc. v. Quality Care–USA, Inc.,* 874 F.2d 431, 436–37 (7th Cir.1989); *see generally,* D. Dobbs, Handbook on the Law of Remedies § 3.5, at 165–74 (1973).

\*     \*     \*     \*     \*     \*

The district court's allocation of the settlement payment, expenses, and fees was not clearly erroneous. Also, its decision to award prejudgment interest is consistent with the relevant Missouri cases. Accordingly, we affirm the judgment of the district court.

HENLEY, Senior Circuit Judge, concurring.

While I concur fully in the opinion of the court, I add only that it appears that while Missouri courts now pay lip service to the rule that prejudgment interest is generally not recoverable on unliquidated demands, in fact unliquidated insurance claims are not subject to the general rule. *See Mauer v. Board of Trustees,* 762 S.W.2d 517, 520 (Mo.Ct.App.1988); *Catron v. Columbia*

*Mut. Ins. Co.,* 723 S.W.2d 5, 9 (Mo.1987) (en banc) (Welliver, J., dissenting).