Rose Nell McKEE, Appellant,

v.

FEDERAL KEMPER LIFE
ASSURANCE COMPANY,
Appellee.

No. 89–2983.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 13, 1990.
Decided Feb. 27, 1991.

D. Todd Williams, Jonesboro, Ark., for appellant.

Lucinda McDaniel, Jonesboro, Ark., for appellee.

Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and HANSON,* District Judge.

JOHN R. GIBSON, Circuit Judge.

Rose Nell McKee appeals from a judgment of the district court[1] denying her claim against Federal Kemper Life Assurance Company for a penalty and attorneys' fees provided under Ark.Stat.Ann. § 23–79–208(a) (1987)[2] for failure to pay

---

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The Honorable George Howard, Jr., United States District Judge for the Eastern and Western Districts of Arkansas.

2. Arkansas Code Ann. § 23–79–208(a) provides:

In all cases where loss occurs and the ... life ... insurance company ... liable therefor shall fail to pay the losses within the time specified in the policy, after demand made therefor, the ... firm, corporation, or association shall be liable to pay the holder of the policy or his assigns, in addition to the amount of the loss, twelve percent (12%) damages upon the amount of the loss, together

life insurance benefits within two months of receipt of the proof of loss.[3] Mrs. McKee's husband, insured by Federal Kemper, was killed in an automobile accident on February 20, 1989. Federal Kemper mailed the payment check to Mrs. McKee on May 4, 1989, two months and three days after its agent received the proof of loss. The district court held that notwithstanding the two-month deadline, the statute impliedly allowed Federal Kemper a reasonable time to investigate the claim, and that its investigation was reasonable and conducted in good faith. *McKee v. Federal Kemper Life Assurance Co.*, 726 F.Supp. 245, 247–48 (E.D.Ark.1989). Mrs. McKee maintains that the statute must be applied as written, requiring payment to be made within two months from the date of receipt of proof of loss. We affirm the judgment of the district court.

Bobby McKee, a physician, applied to Federal Kemper for a life insurance policy in the amount of $5,000,000. That policy, issued July 1, 1988, named his wife as beneficiary. The policy had a two-year contestable period, during which time Federal Kemper was entitled to contest the validity of the policy based on any material misrepresentation of fact made in the application.

McKee was killed in a car accident near Kennett, Missouri, on February 20, 1989, when his Mercedes Roadster attempted to pass a truck on a rain-slick highway. McKee apparently could not see oncoming traffic because of spray from the truck, and he spun out of control into the oncoming lane and collided with the approaching traffic. Mrs. McKee submitted a proof of loss to Federal Kemper's agent on March 1, 1989. Federal Kemper received the proof on March 3, and on March 6, it retained Equifax to investigate the claim. On March 15, Mary Beth Jachec, a Federal Kemper claims representative, wrote to

Mrs. McKee's attorney to state that investigation of the claim had begun, that Federal Kemper would act as quickly as possible, but that the investigation might delay settlement.

Federal Kemper routinely obtains the medical records of the insured in contestable cases. The records are reviewed for evidence of a serious or fatal disease, which would raise the possibility of suicide. A Federal Kemper claims representative also reviews the medical records to make sure that the insured did not make a material misrepresentation in his application. Federal Kemper also investigates the possibility of additional life insurance because "overinsurance" may be a clue that the insured was "contemplating death or suicide."

Initially, the Equifax investigation was hampered by the inability to contact Mrs. McKee, who was out of town until late March. Her authorization, obtained on March 28, was necessary for Equifax to secure McKee's medical records. Equifax eventually obtained medical records, the police accident report, the coroner's report, and a copy of McKee's driving record. Equifax also contacted the General American Insurance Company to confirm that Mr. McKee had dropped a $3,000,000 policy that he had stated on his application he would drop if insured by Federal Kemper.

On May 2, Federal Kemper received the last report from Equifax, which indicated that Mr. McKee did not have a policy in force with American General at the time of death. Jachec then contacted the reinsurer, Mercantile and General Reinsurance Company, for its approval of payment.

After Mercantile faxed its approval to Federal Kemper on May 3, Jachec calculated the amount of interest due. On May 3, a computer printed a check to Mrs. McKee

---

with all reasonable attorneys' fees for the prosecution and collection of the loss.

**3.** Arkansas Stat.Ann. § 23–81–113 (1987) provides:

(a) There shall be a provision that when a policy shall become a claim by the death of the insured, settlement shall be made upon receipt of due proof of death and, at the insurer's option, surrender of the policy or proof of the interest of the claimant or both surrender and proof.

(b) If any insurer shall specify a particular period prior to the expiration of which settlement shall be made, the period shall not exceed two (2) months from the receipt of the proofs.

in the amount of $5,072,454.26, and on May 4, Jachec mailed the check to Mrs. McKee's attorney.

The attorney received the check no later than May 8, the day on which he returned the check with a summons and complaint asserting that the check was paid more than two months after receipt of proof of loss and was for an incorrect amount.

On May 18, Federal Kemper admitted the amount of interest had been miscalculated, and tendered a second check in the amount of $5,084,554.18. On July 14, Federal Kemper wrote one more check for $15,503.77, covering interest owing on the two-week period between the first and second settlement checks.

Mrs. McKee filed suit in state court seeking recovery of the twelve percent statutory penalty and attorneys' fees under Ark. Stat.Ann. § 23–79–208(a), arguing that Federal Kemper exceeded the two-month limit allowed for claim settlement under Ark.Stat.Ann. § 23–81–113(b). Federal Kemper removed the case to federal district court, 726 F.Supp. at 246, where the parties filed cross motions for summary judgment. *Id.* The district court denied Mrs. McKee's motion and granted Federal Kemper's, holding that Arkansas courts allow insurers a reasonable time for investigation, and that the investigaiton of Mrs. McKee's claim was reasonable and conducted in good faith. *Id.* at 248–49.

## I.

We review de novo the district court's grant of summary judgment. *Didier v. J.C. Penney Co.,* 868 F.2d 276, 280 (8th Cir.1989). We will affirm only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c); *United Tel. Co. v. Johnson Publishing Co.,* 855 F.2d 604, 607 (8th Cir. 1988).

## A.

■ The central dispute in this case concerns the proper interpretation of two Arkansas statutes that govern the settlement of insurance claims. Ark.Stat.Ann. § 23–79–208(a) states that if the insurer "shall fail to pay the losses within the time specified in the policy, after demand made therefor, the [insurer] ... shall be liable" for a twelve percent penalty plus reasonable attorneys' fees. Ark.Stat.Ann. § 23–81–113(b) states that the period for settlement under a life insurance policy "shall not exceed two (2) months from the receipt of the proofs" of death.

McKee contends that when these two statutes are read together, they lead to the inescapable conclusion that Federal Kemper is liable for the twelve percent penalty and attorneys' fees for failure to pay the claim within the two-month statutory period. The statutes, McKee asserts, contain "mandatory and unambiguous" language and must be accorded their plain meaning.

Federal Kemper argues that the Arkansas courts have construed Ark.Stat.Ann. § 23–79–208(a) to allow an insurer a "reasonable time" to make a necessary investigation into whether a claim is properly payable. Federal Kemper asserts that it never denied liability on Mrs. McKee's claim and that it merely conducted a reasonable and good faith investigation into the circumstances of death. The district court observed that no Arkansas court has construed Ark.Stat.Ann. § 23–81–113(b), but concluded, based on the cases construing section 23–79–208(a), that failure to comply with the two-month limit does not subject an insurer to the automatic imposition of statutory penalties.

The Arkansas Supreme Court has stated that section 23–79–208(a) is "highly penal in nature and is to be strictly construed." *Callum v. Farmers Union Mut. Ins. Co.,* 256 Ark. 376, 508 S.W.2d 316, 319 (1974). The Arkansas courts have acknowledged "many exceptions to liability" for the penalty and attorneys' fees. *Federal Life & Casualty Co. v. Weyer,* 239 Ark. 663, 391 S.W.2d 22, 23 (1965). The penalty statute is "directed against unwarranted delaying tactics of insurers," *Simmons First Nat'l Bank v. Liberty Mut. Ins. Co.,* 282 Ark. 194, 667 S.W.2d 648, 650 (1984), and does not operate as a bar to an insurer's reason-

able and timely efforts to conduct necessary investigation. *See Clark Center, Inc. v. Nat'l Life & Accident Ins. Co.*, 245 Ark. 563, 433 S.W.2d 151, 153 (1968); *Clark v. New York Life Ins. Co.*, 245 Ark. 763, 434 S.W.2d 611, 613 (1968).

*Clark Center, Clark,* and a related Eighth Circuit case, *Clark v. Paul Revere Life Ins. Co.*, 417 F.2d 683 (8th Cir.1969), are the key cases interpreting section 23–79–208(a). All three cases arose from the same incident—the death of Millard M. Clark and the subsequent suits by his beneficiaries to collect on various life insurance policies. Clark died of a gun shot wound to the side of his head; his widow was later charged with the homicide. 434 S.W.2d at 612. The insurer started timely investigations focusing on the possibility of suicide or homicide, 417 F.2d at 685, but was denied information by the widow and the prosecuting attorney. *Id.*

The Arkansas Supreme Court held that the insurer was entitled to a "reasonable time" after receiving proof of loss to make a necessary investigation. *Clark Center,* 433 S.W.2d at 153; *Clark,* 434 S.W.2d at 613. Following these rulings, this court overturned the award of a penalty and attorneys' fees in *Clark v. Paul Revere Life Ins.*, 417 F.2d at 686. The rule of the *Clark* cases still stands. *See Farm Bureau Mut. Ins. Co. v. Shaw,* 269 Ark. 757, 600 S.W.2d 432, 434–35 (Ark.Ct.App.1980).

McKee acknowledges the *Clark* rule, but argues that the allowance for a "reasonable time" does not apply when the two-month limit of section 23–81–113(b) governs the settlement of the claim. McKee asserts that the Arkansas legislature, by adopting a special rule for the payment of life insurance proceeds, intended to require insurers to pay all life insurance claims within two months. McKee, citing *Ragland v. Alpha Aviation, Inc.*, 285 Ark. 182, 686 S.W.2d 391, 392, *supplemented,* 285 Ark. 182, 688 S.W.2d 301 (1985), urges that we give effect to legislative intent, which she contends is found in the plain meaning of the words of section 23–81–113(b). In *Ragland,* the Arkansas Supreme Court stated that "[t]he primary rule in the con-

struction of statutes is to ascertain and give effect to the intention of the legislature." *Id.,* 686 S.W.2d at 392.

The Arkansas courts have established, however, that they reject "plain meaning" when "common sense dictates" that legislative intent is not accurately reflected in the words of the statute. In *Simmons,* the Arkansas Supreme Court held that the Arkansas General Assembly "did not intend to impose a 12% penalty on an insurer for exercising its right to timely seek a new trial or timely obtain appellate review." 667 S.W.2d at 650. *Simmons* thus rejected a "plain meaning" reading of Ark.Stat. Ann. § 66–3238, the predecessor of section 23–79–208.

The Arkansas Supreme Court has construed section 23–79–208 to allow insurers to conduct a reasonable and timely investigation, and we believe that the district court did not err in concluding that the exception continues to apply even when the mandatory two-month period of section 23–81–113(b) governs the payment of the insurance claim. In the absence of controlling state precedent, we grant substantial deference to the district court's interpretation of state law. *Kansas State Bank v. Citizens Bank,* 737 F.2d 1490, 1496 (8th Cir.1984). We therefore affirm the district court in concluding that Arkansas law accords insurers a reasonable time to investigate a claim under a life insurance policy.

### B.

█ McKee next argues that if insurers do have a "reasonable time" to investigate a claim under a life insurance policy, then a jury question exists as to whether Federal Kemper's payment after the two-month period was reasonable.

The district court relied on *Taylor v. Mutual Life Ins. Co.*, 193 Ark. 251, 98 S.W.2d 944 (1936), and *Blue Cross & Blue Shield v. Remagen,* 25 Ark.App. 96, 752 S.W.2d 284 (1988), in concluding that while a jury decides whether the insurer is liable under the policy, the trial court determines whether the statutory penalty and attorneys' fees should be imposed. *McKee,* 726 F.Supp. at 248. McKee challenges the dis-

trict court's conclusion, but cites no authority to support her argument.

We give great weight to the district court's interpretation of state law, *Nodaway Valley Bank v. Continental Casualty Co.*, 916 F.2d 1362, 1367 (8th Cir.1990), and we find nothing in *Taylor* or *Remagen* to suggest that the district court " 'has not correctly applied local law.' " *Kansas State Bank*, 737 F.2d at 1496.

■ McKee also challenges the district court's conclusion that the investigation was reasonable, but makes no specific argument other than stating that nothing about the manner of her husband's death was unusual or excused the delay in payment. McKee does not dispute the chronology of events, and the affidavits of Tarver, the Equifax representative, and Jachec, the Federal Kemper claims representative, are uncontroverted. The affidavits establish that: Jachec contacted Equifax within three days of receiving Mrs. McKee's proof of loss; Equifax started its investigation on March 21; Equifax obtained medical, accident, coroner's, and driving records throughout March and April; Jachec received on May 2 the final Equifax report confirming that McKee had no policy at the time of death with American General; and the check to Mrs. McKee was printed on May 3 and mailed on May 4.

We also observe that the initial phase of the Equifax investigation was delayed one week[4] because Mrs. McKee was out of town and unavailable for an interview. The investigator needed Mrs. McKee's signature to obtain her late husband's medical records. The meeting was also necessary to inquire into medication taken by McKee, the identity of his dentist, his smoking history, and the existence of other life insurance policies. Because of Mrs. McKee's absence, the meeting did not take place until March 28.

Finally, McKee contends that a finding of reasonableness here will allow insurance companies to take whatever time they

deem necessary to investigate a claim while the family of the deceased waits helplessly. As our holding is based on the narrow and undisputed facts of this case, this argument is not persuasive.

The undisputed facts convince us that the district court did not err in finding that Federal Kemper "paid the claim as soon as it completed" a "reasonable" and "good faith" investigation. *McKee*, 726 F.Supp. at 248.

For the foregoing reasons, we affirm the order of the district.

---

4. Tarver of Equifax states in his affidavit that an Equifax representative attempted to contact Mrs. McKee on March 21 but discovered that she was out of town and would not return until the following week. The Equifax representative again tried to reach Mrs. McKee on March 27. On that date, he arranged a March 28 meeting with her that took place as scheduled.