**NORDSTROM, INC., a Washington corporation, Plaintiff,**

v.

**CHUBB & SON, INC., a New York corporation, d/b/a Chubb or The Chubb Group of Insurance Companies; and Federal Insurance Company, an Indiana corporation, d/b/a Chubb or The Chubb Group of Insurance Companies, Defendants.**

No. C92–141R.

United States District Court, W.D. Washington.

Oct. 9, 1992.

Larry Steven Gangnes, James Lewis Robart, Lane, Powell, Spears, Lubersky, William A. Helsell, Helsell, Fetterman, Martin, Todd & Hokanson, Seattle, WA, for plaintiff.

Thomas Martin Jones, Cozen & O'Connor, Seattle, WA, David J. Meadows, Michael J.

Proctor, Keker, Brockett & Van Nest, San Francisco, CA, for defendants.

ORDER GRANTING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT ON THE ISSUES OF DEFENDANTS' OBLIGATION TO PAY THE FULL SETTLEMENT AMOUNT AND DEFENSE COSTS

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on plaintiff's motions for partial summary judgment regarding defendants' obligation to pay the entire settlement amount and defense costs. Having reviewed the motion together with all documents filed in support and in opposition, and having heard oral argument, the court finds and rules as follows:

## I. BACKGROUND

Defendants Federal Insurance Company ("Federal") and its managing agent, Chubb & Son, Inc. ("Chubb") issued a directors and officers liability insurance policy ("D & O insurance") to plaintiff Nordstrom, Inc. ("Nordstrom"). Nordstrom contends that defendants misrepresented the benefits available under the D & O insurance, wrongfully denied coverage, and unlawfully refused to pay several million dollars worth of Nordstrom's claims.

Nordstrom's liability was incurred in the defense and settlement of class actions brought in state and federal courts on behalf of purchasers of Nordstrom stock. These class actions were ultimately consolidated into one federal action. Declaration of W. Drew Murphy, ¶ 10. These securities fraud class actions alleged that the directors and officers of Nordstrom violated state and federal securities laws while acting in their official capacities. Declaration of W. Drew Murphy, Exhibit I; "Second Amended and Consolidated Class Action Complaint for Damages under the Federal Securities Laws, Washington State Securities Act, Common Law of Negligent Misrepresentation and Consumer Protection Act" (hereinafter, "Amended Complaint,"), ¶ 25. Both Nordstrom and its directors and officers were named as defendants in the class actions.

The class plaintiffs claimed that the directors and officers failed to disclose Nordstrom's allegedly illegal employment practices and associated back-pay liability, which artificially inflated its stock price. Amended Complaint, ¶ 2.

The consolidated class actions were ultimately settled for $7.5 million, well below the $25 million limit on claims under Nordstrom's D & O insurance policy. Federal and Chubb, however, have paid only about half of the $7.5 million settlement amount and approximately half of the $1,083,000 in costs and attorneys' fees that Nordstrom incurred in defending the actions. Nordstrom subsequently filed this action against Federal and Chubb to recover the balance of the settlement amount and defense costs.

The parties agree that Nordstrom's D & O insurance obligated Federal and Chubb to reimburse Nordstrom's directors and officers for their expenses incurred in the defense and settlement of the class actions. Federal and Chubb do not dispute that all claims asserted against Nordstrom's directors and officers were covered by that insurance.

The issue before the court is the extent of that coverage with respect to Nordstrom. The court must therefore determine which class action claims would have exposed Nordstrom to liability independent of, rather than derivative from, its directors' and officers' liability.

Federal and Chubb contend that Nordstrom faced substantial exposure as a named defendant in the class actions. Defendants contend that the policy does not cover the portion of defense costs and the settlement amount that can be attributed to Nordstrom's exposure to liability. Federal and Chubb argue that their insistence on an initial 50–50 allocation between Nordstrom and its officers and directors was appropriate, and further, that additional discovery is required to determine the proper allocation.

Nordstrom contends that it faced only derivative liability which was based entirely on the insured officers' and directors' acts. Nordstrom argues that the defense and settlement of all the class action claims must therefore be allocated to its officers and di-

**532**

rectors because only their actions were at issue. Nordstrom contends that Federal and Chubb would be entitled to allocation only if some of the class action claims were based on an uninsured loss, which would necessarily implicate wrongful acts of uninsured Nordstrom employees. According to Nordstrom, its exposure based on derivative liability was not such an uninsured loss, nor was there any other such uninsured loss.

## II. DISCUSSION

### A. *Standard of Review.*

On a motion for summary judgment, this court will look at the evidence in the light most favorable to the non-moving party, and determine whether there are any genuine issues of material fact which would require a jury or judge to resolve the parties' differing versions of the truth at trial. *Sierra Club v. Penfold,* 857 F.2d 1307, 1320 (9th Cir.1988). If the nonmoving party will bear the burden of proof at trial on an essential element of its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact as to that element, then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Any disagreement about a material issue of fact does not preclude summary judgment. Rather, such disagreement will preclude summary judgment only if it "may reasonably be resolved in favor of either party." *California Architectural Bldg. Prod.'s. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987) (*quoting, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

### B. *Allocation between Nordstrom and its Directors and Officers.*

The court shall first address the factors to be considered in its determination of the appropriate allocation between Nordstrom and its officers and directors. While allocation for defense costs and the settlement amount are distinct issues, the same law and reasoning applies equally to both. The court therefore considers both issues together for the purpose of determining the appropriate proportion of allocation.

The Ninth Circuit has held that an insurer providing D & O insurance has the right to allocate defense costs according to covered and uncovered claims in the underlying litigation. *See, Okada v. MGIC Indem. Corp.,* 823 F.2d 276, 282 (9th Cir.1986); *Gon v. First State Ins. Co.,* 871 F.2d 863, 868–869 (9th Cir.1989). The Ninth Circuit has not, however, addressed allocation between directors and officers and their corporate employer when they are joined as defendants in litigation.

In both *Okada* and *Gon,* only the directors of two different savings & loan institutions were named as defendants in the underlying litigation. At issue was whether the insurers were required to advance all defense costs for their insureds' defense, although some of the claims were not covered under the D & O policy. In *Okada,* the court found that the proper allocation could be determined by the nature of the underlying complaint. 823 F.2d at 282. The court held that the insurer was required to advance defense costs for all covered claims, and potentially covered claims, on the condition that the insurer could reserve its rights with respect to those claims that were determined to fall within the D & O policy's four exceptions to coverage (libel and slander, illegal profits or advantage, illegal compensation, and short-swing profits). *Okada,* at 282.

In *Gon,* the court found that allocation between the covered and uncovered claims against the directors could not be easily distinguished. 871 F.2d at 868. The court held that the insurer was nevertheless responsible for payment of all legal expenses as incurred, subject to apportionment and reimbursement for defense of uncovered claims after settlement or judgment in the underlying action. *Gon,* 871 F.2d at 869. After settlement, the court reasoned, the parties would be in a position to determine which claims were covered and which were not. *Id.* at 869.

The Eighth Circuit addressed allocation among insured directors and other, uninsured individuals and corporations in *Nodaway Valley Bank v. Continental Cas. Co.,*

916 F.2d 1362, 1363 (8th Cir.1990). The context in which allocation took place in *Nodaway* differs substantially from the context in this case because in *Nodaway* claims were made against the insured officers and directors, other uninsured employees, and an uninsured corporate holding company. 916 F.2d at 1367. After extensive review of the facts supporting the claims in the underlying case, the Eighth Circuit affirmed the district court's determination that the insured directors carried 90% of the liability exposure in the underlying case. *Id.* at 1367. *Nodaway* allocated only the remaining 10% of liability to the uninsured defendants. 916 F.2d at 1367.

In the district court's discussion of allocation, however, the court reasoned that in a situation where the uninsured corporate employer is joined in litigation with insured officers and directors, the D & O insurance should provide full coverage. *Nodaway Valley Bank v. Continental Cas. Co.*, 715 F.Supp. 1458, 1466 (W.D.Mo.1989). The court reasoned:

> It seems clear that merely derivative corporate liability should not cause apportionment between the primary wrongdoer and a vicarious wrongdoer, where both are joined in litigation. My conclusion would not expand the insurance policy to unfairly create corporate coverage; it simply gives full effect to the D & O coverage. Defendant [insurer] would of course not be exposed to responsibility for corporate coverage where an uninsured employee creates corporate liability or even, apparently, where the corporation alone is sued.

*Nodaway*, 715 F.Supp. at 1466.

The Seventh Circuit has agreed with the district court's reasoning in *Nodaway*. *See, Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 368 (7th Cir.1990). The underlying suits in *Harbor* were one class action against twenty-five directors, officers and employees of the corporate employer identified only as "John Does," and a second suit which named the corporate employer and five of its directors, identified by their proper names. 922 F.2d 357 at 359. The two suits were settled for $17.5 million, and the Seventh Circuit remanded the issue of allocation to the district court. *Harbor*, 922 F.2d at 368–369.

The Seventh Circuit directed the district court "to determine how much larger the settlement was by virtue of the activities by [uninsured individuals]." *Harbor*, 922 F.2d at 368. With respect to allocation between the corporate employer and its insured directors and officers, however, the Seventh Circuit found that the district court should allocate all liability to the directors and officers: "To allow the insurance companies an allocation between the directors' liability and the corporation's derivative liability for the directors' acts would rob [the corporate employer] of the insurance protection that it sought and bought." *Harbor*, 922 F.2d at 368. The court held therefore that the entire $17.5 million should be allocated to the directors and officers, except for any exposure that the corporate employer may have faced due to the activities of any uninsured employees. *Id.* at 368.

Similarly, in *Perini Corp. v. National Union Fire Ins. Co.*, No. 86–3522S (D.Mass. June 2, 1988), the district court allocated defense costs exclusively against the insured directors and officers for the defense of a claim of tortious interference brought against them and their corporate employer, when the basis for the claim was based solely on the acts of a named director. The court specifically rejected the insurer's argument that the costs incurred in defense of this claim should be divided in half between the corporation and the insured directors and officers.

Where the underlying suit makes claims based on the acts of individuals or entities other than the insured directors and officers, there is no dispute that D & O insurance would not cover claims against those uninsured individuals or entities. *See, e.g., Pepsico, Inc. v. Continental Casualty Co.*, 640 F.Supp. 656 (S.D.N.Y.1986) (allocation under D & O policy appropriate where Rule 10b–5 suits were filed against the corporation's directors and officers, a former corporate officer, and the corporation's accounting firm); *Federal Realty Investment Trust v. Pacific Ins. Co.*, 760 F.Supp. 533 (D.Md.1991) (allocation of defense costs is required between claims covered under the D & O policy and

claims not reasonably related to the defense of covered claims).

This court's determination of whether allocation is appropriate between Nordstrom and its officers and directors depends, therefore, on Nordstrom's exposure to liability in the underlying suits due to actions other than those taken by its officers and directors.

### C. Basis of Nordstrom's Liability.

The class action complaints alleged wrongful conduct only on the part of Nordstrom's officers and directors. Defendants Chubb and Federal contend that Nordstrom nevertheless faced exposure to liability on other grounds. Defendants' theories of Nordstrom's independent liability are described below.

First, defendants contend that the extent to which the class action allegations are actually true must be investigated. Defendants contend that an in-depth review of the factual basis supporting the class action claims is therefore required.[1] Defendants contend that they must determine the extent to which the individually named officers and directors actually knew of the allegedly illegal employment practices.[2] Defendants reason that if the individually named officers and directors showed that they did not have the requisite knowledge of wrongdoing, they would not have been found liable.

Defendants contend that their proposed discovery may reveal that even if the individual directors and officers would have escaped liability, Nordstrom might have faced liability under a "collective scienter" doctrine. Defendants explain that they would attempt to prove liability against Nordstrom by showing

that Nordstrom management or lower-level employees knew about the allegedly illegal employment practices.

Second, defendants allege that further discovery may reveal other circumstances by which Nordstrom could have been found liable independent of its officers and directors. Nordstrom announced, at the same time that the allegations of illegal employment practices were made, that prior profit projections had been overly optimistic. Defendants contend that Nordstrom could have faced liability for not announcing this change in profitability earlier. Defendants intend to show that this possibility of liability played a part in the settlement. Defendants also argue that they are not liable for any costs incurred with respect to pursuing a defense to this theory of liability.

Third, defendants argue that two other lawsuits, the "UFCW" (United Food and Commercial Workers Union Local 1001, et al. v. Nordstrom, 90–2–04282–1, Superior Court, King County) and the "DLI" (Nordstrom v. Department of Labor Industries, No. 90–2–05507–8, Superior Court, King County), in which the individual officers and directors were not named as defendants, also benefited from the settlement of the class actions. Defendants maintain that they are not liable for any defense costs incurred in the preparation of the defense for these two suits.

Fourth, defendants contend that claims for treble damages under the Consumer Protection Act in the underlying class action suits would not have been covered under the D & O insurance even against the officers and directors. On this basis, defendants deny

---

1. The class actions alleged that Nordstrom employees were required or encouraged to perform certain functions without compensation, such as attending meetings, locating merchandise, making home deliveries and customer phone calls, performing stock work, addressing customer mail, maintaining personal trade books, and working special projects. The class actions alleged that these illegal employment practices caused Nordstrom to incur substantial back-pay liability. The class actions' theory of liability hinged on the directors' failure to disclose this back-pay liability, which allegedly caused an artificial inflation of Nordstrom's stock price. Amended Complaint, ¶ 17.

2. Federal and Chubb have indicated their intention to depose not only the named officers and directors in the underlying litigation, but also any other Nordstrom employees identified as having knowledge of the wrongful "off-the-clock" employment practices, and persons in Nordstrom's public relations and financial reporting departments who were involved in the process of making public announcements concerning earnings and other financial information. Declaration of David J. Meadows, ¶ 13.

liability for that portion of the settlement and defense costs related to these claims.

■■■■ An insurer is not entitled, however, to re-litigate an underlying action following a settlement. *See, e.g., Luria Bros. & Co. v. Alliance Assurance Co.,* 780 F.2d 1082, 1091 (2nd Cir.1986) (the insured need not establish actual liability to the party with whom it has settled to recover the amount of settlement from the insurer, so long as potential liability is shown to exist on the facts known to the insured). Indeed, the *Nodaway* court stated: "It must be remembered, however, that the court is not required to resolve all fact and legal issues in the underlying case, but simply to determine what reasonable allocations should have been made, considering uncertainties in both fact and law known at the time of the settlement." *Nodaway Valley Bank v. Continental Casualty Co.,* 715 F.Supp. 1458, 1465 (W.D.Mo.1989).

The court will not allow Chubb and Federal to perform the extensive discovery it has outlined. Such discovery is neither necessary nor warranted by the circumstances of this case. First, with respect to defendants' proposed discovery to determine the actual liability of the individually named officers and directors, the court need only determine that the officers and directors faced a potential liability in the underlying action, and that the settlement reasonably approximated their estimated exposure to liability. Any allocation of the settlement amount is appropriately based on the claims that were actually settled; not on claims that could have been brought or that the class plaintiffs might have chosen to pursue, but did not.[3]

Defendants contend nevertheless that they are entitled to pursue discovery that may reveal that uninsured Nordstrom employees, such as Nordstrom's attorneys or accountants, were actually responsible for the wrongful conduct attributed to Nordstrom's officers and directors in the class actions. These uninsured Nordstrom employees who, according to Federal and Chubb, are poten-

tially liable, were not named as defendants in the underlying class actions, had no direct allegations made against them, were not involved in any settlement negotiations, and were not part of the final settlement. If Federal and Chubb do prove liability with respect to these uninsured employees, defendants' remedy would not be allocation, but rather remedies pursuant to the D & O insurance's subrogation clause. Defendants are entitled to bring a claim for contribution against any uninsured Nordstrom employee or third party who can be shown to be jointly and severally liable with the officers and directors. *See Employers Ins. of Wausau v. Musick, Peeler & Garrett,* 954 F.2d 575, 579 (9th Cir.1992) (holding that a settlement agreement does not bar subsequent actions for contribution by settling defendants against individuals who were not party to the original suit).

Second, the court finds that defendants have not raised a genuine issue of material fact with respect to defendants' alternative theories of liability. Despite their extensive involvement in the settlement of the underlying class actions and the discovery that has taken place in this action to date, Federal and Chubb have been unable to produce any evidence suggesting that the settlement involved any claim other than the failure of Nordstrom's officers and directors to disclose the allegedly illegal employment practices.

Certainly, a district court should permit discovery if it appears that a party opposing summary judgment cannot, without the requested discovery, present facts essential to its opposition. Fed.R.Civ.P. 56(f). It is equally true, however, that a party may not forestall an unfavorable ruling on summary judgment by mere allegations or speculation. *Volk v. D.A. Davidson & Co.,* 816 F.2d 1406, 1416 (9th Cir.1987). The "burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence sought exists," especially where, as here, there has been an opportunity for discovery. *Id.* at 1416.

---

**3.** Moreover, even if defendants could show that Nordstrom management or lower-level employees knew about the allegedly illegal employment practices, federal securities laws do not provide for direct corporate liability without the involve-

ment of senior management personnel. *See Naye v. Boyd,* Fed.Sec.L.Rep. (CCH) ¶ 92,997, at 94,-807 (W.D.Wash.1986) (citing, *Santa Fe Industries v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977)).

Federal and Chubb have been in a position to have at least learned of the existence of the information they contend is essential to their case. Although this action was filed only in January of 1992, defendants have been involved in the underlying class actions since September of 1990. Supplemental Declaration of W. Drew Murphy, ¶¶ 5–11.[4] Two attorneys representing Federal were present at the settlement conferences conducted in the spring of 1991. Declaration of W. Drew Murphy, ¶ 5. Federal and its attorneys were allowed to participate fully in reviewing drafts of the settlement stipulation and in suggesting various revisions. *Id.* at ¶ 7. The settlement agreement provided that Federal's and Chubb's consent was a condition of the settlement, and their consent (with a reservation of the right to allocation) was obtained on May 10, 1991. *Id.* at ¶ 11, Exhibit J. In November of 1991, the settlement amount was paid to the class plaintiffs. *Id.* at ¶ 16. Since the commencement of this action, Federal and Chubb have propounded written discovery requests to Nordstrom which have resulted in the production of 100,000 to 150,000 pages of documents. Declaration of David J. Meadows, ¶ 12.

Allocation is based, not on the ultimate resolution of all the factual and legal issues in the settled case, but on the court's determination of what "reasonable allocations should have been made, considering uncertainties in both fact and law known at the time of the settlement." *Nodaway Valley Bank,* 715 F.Supp. at 1465. Defendants Chubb and Federal have not persuaded the court that their proposed discovery will produce evidence that would warrant allocation in the underlying class actions.

Defendants have also been provided with various opportunities to object to any defense costs incurred for work directed at claims other than those that were settled. Counsel for Nordstrom forwarded copies of its billing statements for attorneys fees to defendants on a regular basis beginning in September of 1990. Supplemental Declaration of W. Drew Murphy, ¶¶ 5–11. It was not until November of 1991, when the $7.5 million settlement was paid, that defendants requested a more detailed billing format. At this point counsel for Nordstrom responded that it was too late to recreate over a year's worth of prior billing statements in a more detailed format.[5] Declaration of Patrick M. Kelly, ¶ 6, Exhibit E.

No right of allocation exists for the defense of non-covered claims that are "reasonably related" to the defense of covered claims. *See Federal Realty Inv. Trust v. Pacific Ins. Co.,* 760 F.Supp. 533, 536–537 (D.Md.1991) (holding that an insurance company is not entitled to allocation of defense costs when legal services benefitted the defense of both covered and non-covered claims) (citing, *Continental Casualty Co. v. Board of Educ.,* 302 Md. 516, 534, 489 A.2d 536 (1985)). All claims against Nordstrom were also made against its officers and directors. Defendants insist on their need to obtain more detailed billing statements and to depose the attorneys who were involved in defending the class actions. Despite defendants' extensive review of counsel for Nordstrom's billing statements, defendants can proffer no evidence to support their contention that additional discovery will reveal defense costs incurred independent of any "reasonable relation" to the defense of claims against the directors and officers. So long as the preparation of the defense would have been undertaken for the claims against the officers and directors, incidental benefit to other parties

---

4. Defendants have objected to various statements in the Supplemental Declaration of W. Drew Murphy, the Declaration of W. Drew Murphy, and in the declarations of each officer and director of Nordstrom. As the court did not consider these particular statements in its review of the record for summary judgment, defendants' motion is STRICKEN.

5. Several months later, in January of 1992, defendants' counsel completed their audit of the billing statements, and found only $10,800 in fees that were allegedly "inappropriate" or "duplicative" legal services. Supplemental Declaration of W. Drew Murphy, ¶ 16. Defendants do not dispute that the remaining $1.072 million in defense costs were appropriate and reasonable with respect to defense of the underlying class actions. *Id.* at ¶ 16. Defendants, however, explicitly reserved their right to allocation of defense costs in their reasonableness review of the billing statements. Declaration of Patrick M. Kelly, ¶¶ 9, 10.

does not provide a basis for allocation. *Federal Realty Inv. Trust,* 760 F.Supp. at 537–38.

Finally, with respect to defendants' allegation that the treble damages claims against the officers and directors were not covered by the D & O insurance, the settlement precluded any possibility of a treble damage award. Damages are trebled under the Consumer Protection Act only after judgment, and then only in the discretion of the trial judge. Rev.Code Wash. § 19.86.090. Single damages under the Consumer Protection Act are covered by the D & O insurance. The claim for treble damages was therefore not included as part of the settlement amount. Any defense costs associated with the Consumer Protection Act claims giving rise to the possibility of treble damages would have been "reasonably related" to defense of those claims threatening single damages. There is no basis for exclusion of the Consumer Protection Act claims with respect to either settlement amount or defense costs.

NOW, THEREFORE, plaintiff's motions for partial summary judgment with respect to defendants' obligations to pay defense costs and the entire settlement amount are GRANTED.