985 F.2d 981
 Robert J. SIMONS, Plaintiff-Appellant,
v.
CITY OF GRAND FORKS, a municipal corporation; Michael
Polovitz, individually and as Mayor of the City of Grand
Forks; Grand Forks Civil Service Commission; Sally Page,
individually and as a member of the Grand Forks Civil
Service Commission; Arvin Kvasager, individually and as a
member of the Grand Forks Civil Service Commission,
Defendants-Appellees.
 No. 92-1581.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 13, 1992.
Decided Feb. 16, 1993.
 
 John D. Kelly, Fargo, ND, argued, for plaintiff-appellant.
 Robert Allen Feder, Fargo, ND, argued, for defendants-appellees.
 Before JOHN R. GIBSON and MAGILL, Circuit Judges, and BOGUE,* Senior District Judge.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 Robert Simons appeals from the district court's entry of summary judgment denying his 42 U.S.C. § 1983 (1988) claim against the City of Grand Forks, North Dakota, and its officers. Simons had alleged that he was dismissed from his position as City Assessor without due process. Simons argues that the district court[1] erred in failing to recognize factual issues remaining as to the constitutional adequacy of the pre-termination procedures. We affirm.
 
 
 2
 In April 1990, Donna Stumphf, a probationary employee in the City Assessor's Office, filed a grievance against Simons, the Assessor. While investigating this grievance, Mike Polovitz, the Mayor of Grand Forks, learned of numerous other allegations concerning Simons' misuse of city property, mistreatment of city employees, and conduct of personal business on city time.
 
 
 3
 On May 17, 1990, Polovitz informed Stumphf that he denied her grievance. He also suspended Simons for ten days with pay for Simons' admitted use of city telephones for personal calls, city secretarial support for addressing his wedding invitations, and city copy machines for personal copies (behavior not part of the Stumphf grievance). The mayor later reduced the suspension to five days.
 
 
 4
 Stumphf appealed Polovitz's denial of her grievance. On June 5 and 7, the Grand Forks Civil Service Commission met and considered the allegations raised in Stumphf's grievance. Simons and his counsel were present and spoke at the proceedings. The Commission decided in Stumphf's favor and, in response, Polovitz temporarily suspended Simons pending further disciplinary action. On June 14, 1990, the Civil Service Commission issued a written decision sustaining Stumphf's grievance against Simons, and prescribing the following "remedies":
 
 
 5
 1. That disciplinary action be taken, by the Mayor, to control and correct Mr. Simons' conduct and sexist behavior. Such disciplinary action may include suspension, demotion or termination.
 
 
 6
 2. That Mr. Simons be relieved of all supervisory duties in the Assessing Department.
 
 
 7
 3. That Mr. Simons apologize to Mrs. Stumphf, in writing, for his inappropriate conduct, his maltreatment of her and his gender based remarks.
 
 
 8
 On June 20, 1990, Polovitz sent Simons a letter stating that he was considering "the recommendations of the Grand Forks Civil Service Commission relating to the grievance filed by Donna Stumphf" and "other matters concerning [Simons'] conduct in the position as Grand Forks City Assessor." The letter listed eleven specific allegations under investigation and referenced additional concerns regarding Simons' involvement in the relocation of utilities and the purchase of property in Grand Forks. The letter advised Simons that Polovitz would make a decision by June 30, 1990, and that this decision could result in Simons' "suspension, demotion or dismissal." The letter invited Simons to submit "any response, evidence, or other reply for [Polovitz's] review and consideration." The letter also notified Simons of his right of appeal, and stated that all evidence compiled in the investigation would be made available to Simons. Upon request by Simons' attorney, Polovitz extended the decision deadline until July 18, 1990.
 
 
 9
 Between June 20, 1990 and July 18, 1990, there were several communications between Simons' attorney and Polovitz's office regarding the investigation and the examination of evidence by Simons. Polovitz provided Simons with copies of all relevant evidence and allowed Simons access to the original evidence compiled in the investigation. On July 5, 1990, Simons sent Polovitz a lengthy written response to all of the allegations raised in Polovitz's June 20 letter.
 
 
 10
 Over the same period of time, Polovitz interviewed a large number of individuals, including all the employees of the City Assessor's Office. Polovitz interviewed people on both sides of the controversy: both those who corroborated the allegations, and those who defended Simons.
 
 
 11
 On July 18, 1990, Polovitz sent Simons a letter dismissing Simons from his position as City Assessor. The letter listed eight grounds for the termination. Two mentioned the substance of the Stumphf grievance. The list also included Simons' disparate treatment of female employees, submission of inaccurate mileage reimbursement requests, conduct of personal activities on city time, erratic work hours, hostile and threatening attitude toward employees, termination threats against employees that Simons knew he had no authority to terminate, and other "dictatorial actions." The letter concluded by advising Simons of his right to post-termination review. After the "Blue Ribbon" Civil Service Commission approved Polovitz's dismissal of Simons, Simons filed the present suit. The district court entered summary judgment against Simons.
 
 
 12
 We review the district court's grant of summary judgment de novo, and will affirm only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); McKee v. Federal Kemper Life Assur. Co., 927 F.2d 326, 328 (8th Cir.1991). We view the acts in the light most favorable to Simons, and give him the benefit of all reasonable inferences. See Schrader v. Royal Caribbean Cruise Line, Inc., 952 F.2d 1008, 1013 (8th Cir.1991).
 
 
 13
 The sole issue on appeal is whether the pre-termination procedure met due process standards defined in Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). We have already explored the Loudermill standard:
 
 
 14
 The Court laid out the three essential requirements of due process: "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." ... In keeping with this standard, this Court has found violations of due process only when the discharged employee has been afforded no hearing or opportunity to present his version of the facts.
 
 
 15
 Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1412-13 (8th Cir.1990) (quoting Loudermill ) (citation omitted).
 
 
 16
 The undisputed facts before the district court demonstrate that the pre-termination procedure here met the Loudermill standard. Polovitz's June 20 letter to Simons provided Simons with clear written notice of all the allegations against Simons, and offered Simons complete access to the evidence upon which those allegations were based.[2] Between June 20, 1990, and July 18, 1990, Simons had an unrestricted opportunity to present his side of the story. On July 5, 1990, Simons issued a comprehensive written response to all of the allegations raised against him.[3] There is no question that the pre-termination procedures complied with Loudermill.
 
 
 17
 Relying on Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), and Hortonville Joint School District No. 1 v. Hortonville Educational Ass'n, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976), Simons argues that he has a right, independent of those discussed in Loudermill, to a pre-termination decisionmaker capable of judging the particular controversy fairly on the basis of its own circumstances. Simons argues that Polovitz was not such a decisionmaker because Polovitz believed that he was required to terminate Simons as a result of the Civil Service Commission decision regarding the Stumphf grievance. Simons bases this argument on Polovitz's testimony during the post-termination review proceedings before the Blue Ribbon Civil Service Commission in September 1990.[4]
 
 
 18
 Assuming without deciding that Simons was entitled to an "independent" decisionmaker as suggested in Withrow and Hortonville, we conclude that Polovitz satisfied this requirement. Even read generously in Simons' favor, the Polovitz testimony does not reveal any such compulsion to terminate Simons. At most, the testimony establishes that Polovitz felt bound to take some action in response to the Civil Service Commission's decision in the Stumphf case, but considered it his task to decide what specific action would be appropriate. The Commission had "stated as remedies" only that "disciplinary action be taken" and that "[s]uch disciplinary action may include suspension, demotion or termination."
 
 
 19
 Polovitz's answers to two leading questions by opposing counsel at the hearing do lend support to Simons' argument:Q. And you have been quoted in the paper recently as taking the action that is, that the Civil Service Commission adopted at their meeting on June 7 as basically almost an order to you to proceed in accordance with that directive, right?
 
 
 20
 A. Yes.
 
 
 21
 Q. And that is the way you felt about it, right?
 
 
 22
 A. Yes.
 
 
 23
 Q. And that continued to be your feeling about why you were now called upon, was to render, initiate the suspension and ultimate termination, it was based on your understanding that in, at least they were, they had directed you to do it and that's what you were doing, correct?
 
 
 24
 A. Correct.
 
 
 25
 However, after briefly questioning Polovitz about the scope of the Civil Service Commission's authority, opposing counsel asked: "And so in discharging Mr. Simons on, under your letter of July 18, 1990, you really felt you were discharging the directive that the Civil Service Commission had given to you, right?" Polovitz answered: "There were three directives and I chose one of them." On redirect examination, Polovitz clarified that the Civil Service Commission's recommendation was a very important consideration in his decision to terminate Simons, but was not the only reason. After enumerating some of the factors not considered by the Civil Service Commission, Polovitz said: "basically [the decision to terminate Simons] was my decision based upon what the Civil Service Commission recommended and I had to substantiate in some way or form their recommendation."
 
 
 26
 While this testimony alone may suggest ambiguities, it cannot be viewed in isolation from Polovitz's written reasons for terminating Simons. Reading the hearing testimony and written record together, it is clear that while Polovitz relied in some part on the Civil Service Commission's recommendation, he based his decision on independent grounds as well. Considering the evidence in the light most favorable to Simons, and giving him the benefit of all favorable inferences, we reject Simons' argument that Polovitz felt compelled to terminate him. The testimony that Simons relies on says no more than that Polovitz considered the action of the Civil Service Commission as an order to proceed in accordance with the Commissioner's directive, namely to consider the three proposed disciplinary remedies. Polovitz initiated his own investigation and ultimately chose to terminate Simons. In fact, Polovitz's findings relating to allegations not investigated by the Civil Service Commission comprise the bulk of his written reasons for terminating Simons.
 
 
 27
 Considering the entirety of the record before the district court in a light most favorable to Simons, we conclude there is no material issue of fact to prevent entry of summary judgment. We affirm the district court's entry of summary judgment against Simons.
 
 
 
 *
 The Honorable Andrew W. Bogue, Senior United States District Judge for the District of South Dakota, sitting by designation
 
 
 [1]
 The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota
 
 
 [2]
 Simons was aware of these allegations before June 20, 1990. On June 14, 1990, Simons called a press conference during which he responded at length and in great detail to many allegations of misconduct, including the allegations listed in the June 20 letter
 
 
 [3]
 The record also mentions informal oral contact between Simons and Polovitz around this time
 
 
 [4]
 Polovitz later submitted an affidavit denying that the Civil Service Commission's decision was the reason for his termination of Simons. We do not consider this affidavit here, and base our review solely on the evidence cited by Simons